STANLEY LABOVITZ *vs.* MATTHEW H. FEINBERG & others.[1]

No. 97-P-0206.

Worcester. May 11, 1998. - July 16, 1999.

Present: JACOBS, FLANNERY, & BECK, JJ.[2]

*Attorney at Law,* Malpractice, Negligence, Compensation. *Negligence,* Attorney at law. *Practice, Civil,* Summary judgment. *Practice, Criminal,* Plea, Collateral estoppel. *Evidence,* Admissions and confessions, Guilty plea. *Contract,* Compensation of attorney.

In an action alleging legal malpractice, the judge, on the summary judgment record, correctly concluded that the plaintiff failed to demonstrate that his attorneys were negligent or that he had been coerced into pleading guilty in the underlying criminal matter. [307-309]

This court concluded that, absent unusual circumstances, public policy considerations preclude a criminal defendant, who has knowingly and voluntarily pleaded guilty to a crime, and whose ensuing conviction is not otherwise vacated through a successful collateral attack, from asserting his innocence in the subsequent prosecution of any legal malpractice claims brought against the attorneys who represented him in the criminal matter. [309-314]

In a legal malpractice action, the material submitted in support of motions for summary judgment created a genuine issue of material fact with respect to the defendants' alleged breach of contract regarding the scope and extent of their promised representation, and that aspect of the matter was remanded for further proceedings. [314]

CIVIL ACTION commenced in the Superior Court Department on December 19, 1995.

A motion to dismiss was heard by *Francis R. Fecteau,* J.

*Matthew A. Kamholtz* for the defendants.

*Stanley Labovitz,* pro se, submitted a brief.

JACOBS, J. In 1993, Stanley Labovitz, a practicing attorney for over twenty years and experienced in bankruptcy matters, was

---

[1] Terry Philip Segal and the law firm of Segal & Feinberg.

[2] This case was argued before Justices Jacobs, Flannery, and Beck. Following the death of Justice Flannery, Justice Smith was added to the panel.

brought before the Federal District Court on criminal charges of bankruptcy fraud.[3] Those Federal charges were resolved when Labovitz entered into a plea agreement with the government. He brings the instant action against the defendant attorneys who represented him at the time of his guilty plea in the Federal District Court. Acting on the defendants' motion to dismiss and considering submissions outside the pleadings,[4] a Superior Court judge ordered the entry of judgment for the defendants.

1. *Background.* Before engaging the defendants, Labovitz was represented by other counsel in the Federal case. After hiring the defendants he pleaded guilty to thirteen counts, pursuant to a plea agreement negotiated by them and reflecting concessions made by the prosecution. Following the denial of his motion to withdraw his plea, filed by counsel who succeeded the defendants, Labovitz was sentenced to a fifteen-month prison term, followed by two years of supervised release, and ordered to make restitution to certain creditors. After the Federal First Circuit Court of Appeals in a per curiam and unpublished decision affirmed the denial of his motion to withdraw his plea, Labovitz filed this action in the Superior Court.

2. *Allegations.* The essence of Labovitz's prolix pro se complaint is that the defendants committed malpractice when they caused him to plead guilty. He also alleges breach of contract, misrepresentation, negligence, and violation of G. L. c. 93A. With the exception of one aspect of the breach of contract claim which we later address, we conclude that summary judgment properly was entered with respect to these additional allegations for the reasons set forth in the margin.[5]

3. *Legal malpractice.* We first inquire whether Labovitz has

[3]The Federal indictment, brought under 18 U.S.C. § 152 (1988), incorporated twenty-three counts of submission of alleged materially false information and concealment and transfer of assets to defraud creditors, beginning in January, 1991, in four bankruptcy cases Labovitz filed in the United States Bankruptcy Court, including those of three corporations which he owned or substantially controlled, as well as his personal bankruptcy. He represented the corporations and himself in those filings.

[4]Notice was given the parties that the defendants' motion to dismiss would be converted to a summary judgment proceeding, Mass.R.Civ.P. 12(c), 365 Mass. 756 (1974), and they were given opportunity to make additional submissions. See *White* v. *Peabody Constr. Co.,* 386 Mass. 121, 127 (1982); *Capodilupo* v. *Petringa,* 5 Mass. App. Ct. 893, 894-895 (1977).

[5]Labovitz, in his primary breach of contract claim, alleges that he contracted with the defendants to represent him through a trial, paid a fee of $85,000, and did not receive the benefit of his bargain. The record shows that the

made a showing, for summary judgment purposes, that he was negligently represented by the defendants in Federal court. He essentially claims in his complaint that the defendants' negligence created circumstances that coerced him into entering the plea agreement. This allegation is contradicted by the admissions made by him under oath during his plea colloquy in Federal court. See *Aetna Cas. & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 750 (1985) ("The defendant's guilty plea and any other admissions made during the . . . colloquy . . . are admissible as evidence in the civil litigation"). It is also contradicted by the Federal judge's express findings to the effect that his plea was voluntary and uncoerced. Moreover, it is undisputed that successor counsel in Federal court, at the hearing on the motion to withdraw the guilty plea, argued that "there is nobody alleging that [Labovitz's] attorneys in any way oppressed him or coerced him in any unfair or unprofessional manner." Labovitz is bound by that admission. See *Brocklesby* v. *Newton*, 294 Mass. 41, 43 (1936). Also, in an affidavit submitted in the Federal case, almost two years before the initiation of this action, Labovitz merely states that he entered into the plea agreement because of "the pressures to make a decision that day, the thought of reducing my time in jail and, hence, the time away from my family, and the fact that my attorneys were strongly recommending it." In the present action, Labovitz attempts to distance himself from these admissions and findings by claiming that he was subjected to "badgering and threats" and "pressure" from the defendants. He may not, thereby, create a

defendants, at the outset and in writing, proposed to render services for representation during all proceedings in the Federal District Court, but that the initial retainer likely would not cover fees for a trial. Later, during the defendants' representation, they estimated fees for a trial. Our record contains no materials controverting the defendants' evidence that Labovitz neither contracted for trial services nor paid for such services. Accordingly, summary judgment was warranted. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). Moreover, Labovitz's plea agreement effectively modified any contract that may have existed and foreclosed any consideration of trial.

We consider the misrepresentation, negligence, and c. 93A counts in the complaint, together with other claims made under the breach of contract count, such as the defendants misrepresenting themselves as "strong" in criminal bankruptcy practice and exerting "undue influence" on Labovitz to sign the plea agreement, to be encompassed in his claim that the defendants committed legal malpractice. The c. 93A count fails for the additional reason that there is no dispute that the plaintiff omitted making the written demand required by G. L. c. 93A, § 9. See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704-705 (1975); *Cassano* v. *Gogos*, 20 Mass. App. Ct. 348 (1985).

disputed issue of fact, especially when his more recent submissions are not accompanied by any denials or facts that undermine the earlier admissions. Compare *Hanover Ins. Co.* v. *Leeds*, 42 Mass. App. Ct. 54, 58-59 (1997), and cases cited. Contrast *Guenard* v. *Burke*, 387 Mass. 802, 812-813 (1982). An additional deficiency in the submissions in support of the malpractice claim is the absence of expert evidence or affidavit that the defendants failed to meet the applicable standard of care. See *Colucci* v. *Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C.*, 25 Mass. App. Ct. 107, 111 (1987) ("[A]n allegation of malpractice is not self-proving. Expert testimony is generally necessary to establish that an attorney failed to meet the standard of care owed," unless the alleged malpractice would be obvious to laymen relying on their common knowledge). On this summary judgment record, we conclude that Labovitz fails to demonstrate negligence or that he was coerced to plead guilty. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

4. *Preclusion.* Relying on the holding in *Glenn* v. *Aiken*, 409 Mass. 699 (1991), that a person suing his former attorney for malpractice after the reversal of his conviction in an underlying criminal case must prove "that he is innocent of the crime charged," *id.* at 707,[6] the judge determined that Labovitz was precluded from proceeding and granted summary judgment. In doing so, he relied not only on the accepted guilty plea which was twice unsuccessfully challenged, but also on the fact that Labovitz, while claiming that he did not act with the requisite criminal intent, does not deny committing the acts constituting the crime. The judge also noted that Labovitz, as an experienced attorney, is chargeable with knowledge of the elements of the crime to which he pleaded guilty. The defendants rely on narrower grounds and argue that the guilty plea and the proceedings in Federal court preclude Labovitz from relitigating any issue of his innocence and entitle them to summary judgment as matter of law. Although we decide this case primarily on the

---

[6]This principle has gained wide acceptance. See generally 3 Mallen & Smith, Legal Malpractice § 25.3 (4th ed. 1996); Barry, Legal Malpractice in Massachusetts, 78 Mass. L. Rev. 74, 80-81 (1993); Legal Malpractice in Defense of Criminal Prosecution, 4 A.L.R.5th 273, 310-316 (1992 & Supp. 1998). See also *Wiley* v. *County of San Diego*, 19 Cal. 4th 532, 536 (1998) ("In criminal malpractice cases, the clear majority of courts that have considered the question also require proof of actual innocence as an additional element").

basis of Labovitz's failure to sustain his summary judgment burden, part 3, *supra*, and, therefore, do not rely on either the judge's rationale or that of the defendants, in light of the increasing number of legal malpractice claims,[7] the pragmatic policy considerations articulated by the Supreme Judicial Court, *infra*, and the novelty of the issue in this jurisdiction, we address the defendants' contention.

While relying on the innocence requirement of *Glenn* v. *Aiken*, *supra*, the defendants, at the same time, seek to avoid the rule that a person who has pleaded guilty to a crime is not precluded from retrying, in a civil action, factual matters admitted by his plea because no issue had been "actually litigated." *Aetna Cas. & Sur. Co.* v. *Niziolek*, 395 Mass. at 748, quoting from *Haring* v. *Prosise*, 462 U.S. 306, 316 (1983) (defendant, who had pled guilty to arson charges, is not precluded from claiming he did not intentionally cause burning in a suit by an insurer to recover money paid on a policy on the house that was damaged by the arson). Compare *Manzoli* v. *Commissioner*, 904 F.2d 101, 105 (1st Cir. 1990) (guilty plea to tax evasion "is as much a conviction as a jury trial" and estops the convict from denying fraud in subsequent civil action, quoting from *Gray* v. *Commissioner*, 708 F.2d 243, 246 [6th Cir. 1983], cert. denied, 466 U.S. 927 [1984]). Preliminarily, the defendants contend that Labovitz litigated the question of his guilt by unsuccessfully attempting, in Federal court, to withdraw his guilty plea. This contention, in effect, attempts to bring Labovitz's guilty plea within the ambit of a separate aspect of *Aetna*, *supra*,[8] in which that court held that "a party to a civil action against a former criminal defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from relitigating an issue decided in the criminal prosecution." *Id.* at 742. We are not persuaded by the defendants' equating of the plea process with litigation, however, because that *Aetna* holding was issued in the distinguishable context of an underlying conviction, *after a trial.* *Id.* at 738.

More convincing are the public policy considerations urged

---

[7]See 1 Mallen & Smith, Legal Malpractice §§ 1.6-1.7 (4th ed. 1996). See also *Wiley* v. *County of San Diego*, *supra* (referring to the "plethora of [criminal malpractice] decisions, generated by the ever-rising tide of professional negligence actions generally").

[8]*Aetna Cas. & Sur. Co.* v. *Niziolek*, *supra*, involved a defendant (Niziolek) who was convicted of arson after a jury trial and another defendant (Bednarz) who pleaded guilty to arson.

by the defendants and relied on by the judge which lead us to believe that Labovitz's undisturbed guilty plea should preclude him from pursing his civil malpractice claim. In *Glenn* v. *Aiken*, the court, in support of its establishment of proof of innocence as an element of a legal malpractice action, stated, "The underpinnings of common law tort liability, compensation and deterrence, do not support a rule that allows recovery to one who is guilty of the underlying criminal charge. A person who is guilty need not be compensated for what happened to him as a result of his former attorney's negligence." 409 Mass. at 707. The court also stated, "The rule we favor helps to encourage [representation of indigent criminal defendants] by reducing the risk that malpractice claims will be asserted and, if asserted, will be successful." *Id.* at 708.[9] It is significant that the majority opinion in that case cited, *id.* at 702, with apparent approval, *Carmel* v. *Lunney*, 70 N.Y.2d 169, 173 (1987), which essentially held that, because a malpractice claimant must allege his innocence of the underlying crime, an outstanding guilty plea to that offense bars the claimant's action for malpractice against his former attorney. Concluding, as matter of law, that the cause of the civil claimant's damage was his guilty plea and not any alleged attorney malpractice, the New York Court of Appeals noted that the constitutional and procedural safeguards accorded defendants in criminal proceedings "make criminal malpractice cases unique, and policy considerations require different pleading and substantive rules." *Id.* at 173-174. That uniqueness derives from the duty imposed upon judges under both Federal practice and the cognate Massachusetts practice to assure not only that guilty pleas are knowingly, intelligently, and voluntarily offered and that there is factual basis for each crime to which a plea is tendered, but also that the defendant's Sixth Amendment right to effective assistance of counsel has been honored. See generally Fed.R.Crim.P. 11; Mass.R.Crim.P. 12, 378 Mass. 866 (1979); 1A Wright, Federal Practice & Procedure §§ 171-178 (3d ed. 1999); Smith, Criminal Practice & Procedure §§ 1191-1260 (2d ed. 1983 & Supp. 1999). The latter safeguard, coupled with the right of a defendant to challenge

[9]Further policy support for requiring proof of innocence is articulated in *Peeler* v. *Hughes & Luce*, 909 S.W.2d 494, 498 (Tex. 1995), in which the court stated that a convict not only should not profit from his illegal conduct but also should not be permitted to "impermissibly shift[] responsibility for the crime away from the convict." See *Wiley* v. *County of San Diego*, *supra* at 543-544; 3 Mallen & Smith, Legal Malpractice § 25.3 (4th ed. 1996).

the effectiveness of his counsel in post-plea proceedings in the criminal court, distinguishes the case of the legal malpractice claimant from that of the criminal defendant who, under *Aetna Cas. & Sur. Co.* v. *Niziolek,* 395 Mass. at 748, is permitted to litigate civilly whether he is factually guilty of the crime to which he has entered a guilty plea without regard to the effectiveness of his criminal attorney.

Given the right of a defendant to challenge the effectiveness of his counsel in the criminal arena, we believe that, absent unusual circumstances,[10] there is merit in the proposition that a malpractice claimant should be precluded from proclaiming his innocence and his lawyer's negligence in a legal malpractice action unless he has succeeded in withdrawing or vacating his guilty plea on direct appeal or through postconviction proceedings.[11] Several jurisdictions have come to the same conclusion on grounds of public policy, collateral estoppel, or inability to establish causation. See *Orr* v. *Black & Furci, P.A.,* 876 F. Supp. 1270 (M.D. Fla. 1995) (applying Florida law); *Hockett* v. *Breunig,* 526 N.E.2d 995, 999 (Ind. Ct. App. 1988); *State ex rel. O'Blennis* v. *Adolf,* 691 S.W.2d 498 (Mo. Ct. App. 1985); *Doyle*

---

[10]Such circumstances possibly may include a claimed failure to communicate an earlier more favorable bargain offer, see *Krahn* v. *Kinney,* 43 Ohio St. 3d 103, 107-108 (1989), and ineffectiveness at the sentencing stage following a guilty plea, resulting in the convict already having served a longer sentence than he otherwise would have served.

[11]We recognize that the withdrawal or vacating of a guilty plea only affords a criminal defendant a trial on the merits. We do not consider whether a criminal defendant must also be exonerated before being permitted to bring a civil malpractice action other than to note that the practical difficulties of conducting a legal malpractice action based upon attorney negligence in the plea process may justify an exoneration requirement. In the civil action, the client would have to prove by a preponderance of the evidence not only that he would not have pleaded guilty and would have obtained a better result except for his attorney's negligence, but also that he is innocent. The latter element might result in the client unrealistically being required to produce faithfully the prosecution's best evidence against him. Conversely, if the burden of proving guilt is placed on the legal malpractice defendant, he is put in a better position than would have been the prosecutor in the hypothetical trial that was avoided by the client's guilty plea. Among his relative advantages would be the availability of evidence suppressed in the criminal proceeding, together with information known to him and not the prosecution, including otherwise privileged statements of the client. See Kaus & Mallen, The Misguiding Hand of Counsel — Reflections on "Criminal Malpractice," 21 UCLA L. Rev. 1191, 1204-1209 (1974). "The mental gymnastics required to reach an intelligent verdict would be difficult to comprehend much less execute." *Wiley* v. *County of San Diego, supra* at 544.

v. *Ruskin*, 230 A.D.2d 888 (N.Y. 1996); *Peeler v. Hughes & Luce*, 909 S.W.2d 494 (Tex. 1995). See also Annot., Legal Malpractice in Defense of Criminal Prosecution, 4 A.L.R.5th 273, 310-317 (1992 & Supp. 1998).

It follows that, if a guilty plea is vacated on any grounds, including ineffective assistance of counsel, a legal malpractice claimant should be permitted to pursue his action, subject to the innocence requirement. Compare *Glenn* v. *Aiken*, 409 Mass. at 701-702 & n.2 ("Although an appellate court's ruling that counsel was not ineffective may well justify precluding a criminal defendant from maintaining a malpractice action against his trial counsel, if an appellate court did not reach the issue because it reversed the conviction on another ground, a former criminal defendant is not collaterally estopped or precluded from presenting the issue of his defense attorney's negligence" [footnote omitted]).[12] Conversely, an undisturbed guilty plea should serve as a bar to a legal malpractice action even if, as here, the claimant has not pursued an ineffective as-sistance claim in the criminal court.[13]

In supporting a rule that ineffective assistance of counsel generally must be established by collateral attack on a guilty plea in the criminal proceeding in order to avoid preclusion in a legal malpractice action, we recognize that it is arguable the standard for measuring effectiveness of counsel in a constitutional sense may differ from that in a legal malpractice case. See *Glenn* v. *Aiken, supra* at 702 n.2. Compare *Belford* v. *McHale Cook & Welch*, 648 N.E.2d 1241, 1246 (Ind. Ct. App. 1995) (burdens on postconviction relief petition and a legal malpractice claim are the same); *Bailey* v. *Tucker*, 533 Pa. 237, 251 n.14 (1993) ("a finding of ineffectiveness is not tantamount to a finding of culpable conduct" in a malpractice action). Even if one concludes that the standard for proving negligence is marginally less burdensome, the difference is not sufficient to

---

[12]This sentence was preceded by the observation that "we see no logic in making a judicial ruling of attorney ineffectiveness in the constitutional sense a condition precedent to the liability of an allegedly negligent criminal defense attorney." *Id.* at 701. We read that statement to refer to the situation in which a criminal conviction has been reversed on another ground.

[13]While Labovitz does not expressly claim in this action that the defendants were constitutionally ineffective, he did make that assertion to the Federal First Circuit Court of Appeals. That court did not resolve the claim, instead implicitly leaving it to be presented in the District Court. To our knowledge, Labovitz has not done so.

override the substantial policy reasons underlying the innocence requirement. In ordinary circumstances, there are reasonable time limits for filing postconviction claims based on ineffectiveness of counsel in the Federal courts. See Fed.R.Crim.P. 11; 28 U.S.C. § 2255 (1985).[14] In our practice, a defendant is never foreclosed from bringing an original motion to withdraw a guilty plea and for a new trial, grounded on ineffectiveness of counsel. See Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979) (motion for new trial may be granted at any time); *Commonwealth v. Amirault*, 424 Mass. 618, 639 (1997). Accordingly, we believe dictates of fairness are not offended by making the success of such a motion a predicate to a legal malpractice action.

5. *Surviving breach of contract claim.* As we have determined, Labovitz's primary breach of contract claim does not survive the motion for summary judgment. His affidavit, however, contains assertions that his fee arrangement with the defendants "would cover all matters up to an appeal" but that he was told to secure new counsel to file a motion to withdraw his plea and for the sentencing phase. This uncontroverted assertion, viewed in the light of the defendants' evidence that they would represent him in all proceedings in the Federal District Court, except trial, see note 5, *infra*, creates a genuine issue of material fact whether Labovitz was harmed by the defendants when they did not file and pursue a motion to withdraw his guilty plea, thereby causing him to incur successor attorney's fees of $15,000 with respect to that motion. Accordingly, the judgment for the defendants is affirmed with the exception of that aspect of the breach of contract claim relating to the defendants' failure to file and argue a motion to withdraw the guilty plea and to represent him at sentencing.

*So ordered.*

---

[14]Under 28 U.S.C. § 2255, an incarcerated defendant appears to have up to one year after his sentencing on a guilty plea to file a postconviction claim based on ineffectiveness of counsel. See 3 Wright, Federal Practice & Procedure § 594, at 450 (2d ed. 1982 & Supp. 1999) (ineffective assistance of counsel in the constitutional sense is a ground for relief under 28 U.S.C. § 2255). See also *United States v. Arango-Echeberry*, 927 F.2d 35, 39 (1st Cir. 1991).