******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

IAN T. COOKE *v.* JOHN R. WILLIAMS ET AL.
(AC 43641)

Bright, C. J., and Suarez and DiPentima, Js.

*Syllabus*

The plaintiff, who was incarcerated following his conviction of various criminal charges, including murder, sought damages for, inter alia, alleged legal malpractice and fraud by the defendants, an attorney and his law firm, who had previously represented the plaintiff in a habeas action concerning his criminal conviction. The plaintiff alleged that the defendants provided deficient representation in the habeas action by failing to prosecute fully and properly his action and by engaging in fraudulent billing practices. The trial court granted the defendants' motion to dismiss and rendered a judgment of dismissal, concluding that the plaintiff's claims against the defendants were not ripe for adjudication because his underlying criminal conviction had not been invalidated. On the plaintiff's appeal to this court, *held*:

1. The trial court properly dismissed the plaintiff's legal malpractice claim for lack of subject matter jurisdiction because it was not ripe for adjudication; this court, in *Taylor* v. *Wallace* (184 Conn. App. 43), held that a tort action is not ripe for adjudication when success in that action would necessarily imply the invalidity of a conviction and that the action must be dismissed unless the underlying conviction has been invalidated, and, because the plaintiff had been convicted and that conviction had not been invalidated on direct appeal or through a habeas action, his claim was a collateral attack on his underlying conviction, his claim for legal malpractice was not ripe, and the trial court lacked subject matter jurisdiction.

2. The trial court improperly dismissed the plaintiff's claim of fraud as not ripe to the extent the allegations of fraud did not implicate the validity of his conviction; the plaintiff's allegations in support of his fraud claim, that the retainer contract was misrepresented, he was billed for work the defendants did not do, and the defendants inflated or padded the hours they worked, simply alleged a fee dispute, and a judgment for the plaintiff in the fee dispute would not imply the invalidity of his conviction, and, therefore, *Taylor* v. *Wallace* (184 Conn. App. 43) was inapplicable and dismissal of the plaintiff's fraud claim was unwarranted.

Argued March 11—officially released July 27, 2021

*Procedural History*

Action to recover damages for, inter alia, legal malpractice, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Markle, J.*; granted in part the defendants' motion to dismiss and rendered judgment thereon; thereafter, the plaintiff withdrew the remaining counts of his complaint and appealed to this court. *Reversed in part*; *judgment directed*.

*Ian T. Cooke*, self-represented, the appellant (plaintiff).

*John R. Williams*, self-represented, the appellee (named defendant).

*John R. Williams*, for the appellee (defendant John R. Williams and Associates, LLC).

*Opinion*

DiPENTIMA, J. In this appeal, we address the applicability of *Taylor* v. *Wallace*, 184 Conn. App. 43, 194 A.3d 343 (2018), to an action alleging fraudulent and improper fee practices brought by a criminally convicted plaintiff against his former habeas attorney. The self-represented plaintiff, Ian T. Cooke, appeals from the judgment of the trial court granting the motion to dismiss filed by the defendants, John R. Williams and John R. Williams and Associates, LLC,[1] for lack of subject matter jurisdiction. On appeal, the plaintiff argues that the court erred by dismissing as unripe (1) his legal malpractice claim by misapplying the justiciability bar articulated in *Heck* v. *Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), and (2) his fraud claim pursuant to *Heck* for the same reasons. We agree with the plaintiff in part and accordingly reverse in part the judgment of the trial court.

The following facts, as alleged in the amended complaint or as otherwise undisputed in the record, and procedural history are relevant to this appeal. In 2010, after a jury trial, the plaintiff was convicted of, inter alia, two counts of murder and was sentenced to a term of life imprisonment without the possibility of release. See *State* v. *Cooke*, 134 Conn. App. 573, 576–77, 39 A.3d 1178, cert. denied, 305 Conn. 903, 43 A.3d 662 (2012). The plaintiff appealed his conviction, which this court affirmed. Id., 581. In August, 2011, the plaintiff filed a pro se petition for a writ of habeas corpus alleging ineffective assistance of trial counsel. In May, 2012, the plaintiff retained the defendants to represent him in the habeas proceedings. Around the same time, the plaintiff also commenced a federal civil rights action alleging numerous constitutional and tort claims stemming from his pretrial incarceration. In August, 2012, the defendants offered to take over the prosecution of the federal civil rights action, and the plaintiff accepted. The federal civil rights action was settled in November, 2014.

Trial on the plaintiff's habeas petition was held over the course of five days in March, May, July, and September, 2014. On July 8, 2015, the habeas court denied the plaintiff's petition for a writ of habeas corpus.

On January 2, 2018, the plaintiff commenced an action against the defendants based on their representation of him in both the federal civil rights action and the habeas proceedings. In his amended complaint, the plaintiff alleged claims for legal malpractice, negligence, fraud, breach of the covenant of good faith and fair dealing, and breach of contract. The gravamen of these claims was that the defendants neglected to prosecute his actions fully and properly and that they fraudulently billed him for the work performed.

On March 7, 2018, the defendants filed a motion to dismiss the plaintiff's action on the ground that the court

lacked subject matter jurisdiction. Specifically, the defendants argued that the plaintiff's claims relating to the habeas proceedings were not justiciable because his underlying criminal conviction had not been vacated through either a direct appeal or a successful petition for a writ of habeas corpus. The defendants also argued that the plaintiff's claims relating to the federal civil rights action were subject to dismissal because the statute of limitations had run.

On September 17, 2018, the court issued its memorandum of decision on the motion to dismiss. The court denied the motion to dismiss the plaintiff's claims relating to the federal civil rights action on the ground that a statute of limitations special defense must be specially pleaded and cannot be raised by a motion to dismiss.[2] The court granted the motion to dismiss as to the plaintiff's claims relating to the habeas proceedings for lack of subject matter jurisdiction.[3] Citing *Taylor* v. *Wallace*, supra, 184 Conn. App. 51, the court concluded that the plaintiff's claims against the defendants for legal malpractice and fraud were not ripe for adjudication because his underlying criminal conviction had not been invalidated.

The plaintiff filed a number of motions following the court's dismissal of his claims relating to the defendants' representation of him in the habeas proceedings, which the court denied.[4] On November 27, 2019, the plaintiff withdrew the counts of his complaint relating to the federal civil rights action that had not been dismissed.[5] This appeal followed. Additional facts will be set forth as necessary.

Before we address the plaintiff's claims on appeal, we set forth the applicable standard of review of a trial court's granting a motion to dismiss. "[In reviewing] the trial court's decision to grant a motion to dismiss, we take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . [A] motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts. . . .

"A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Subject matter jurisdiction [implicates] the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the

court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings." (Citation omitted; internal quotation marks omitted.) Id., 46–47.

I

The plaintiff's first claim on appeal is that the court erred in dismissing his legal malpractice claim against the defendants as unripe. Specifically, he argues that the court improperly relied on the federal justiciability bar enunciated in *Heck* v. *Humphrey*, supra, 512 U.S. 477. In response, the defendants contend that the plaintiff's legal malpractice claim fails because he has not proven that his underlying criminal conviction was invalidated. We agree with the defendants.

The following additional facts, as alleged in the amended complaint, and procedural history are relevant to our resolution of this claim. In May, 2012, the plaintiff retained the defendants to represent him in the habeas proceedings, and the defendants filed an appearance on his behalf. At the time the plaintiff retained the defendants, the plaintiff had filed a pro se petition for a writ of habeas corpus alleging ineffective assistance of trial counsel. The plaintiff had alleged that his trial counsel was ineffective for his failures to investigate and to present a defense, to use expert witnesses, particularly experts in forensic science, and to ensure the plaintiff's competency to stand trial. The defendants neither filed an amended petition nor discussed with the plaintiff how these issues would be presented and supported during trial.

In support of his position during the habeas trial, the plaintiff intended to have expert witnesses analyze evidence of a third-party perpetrator and ballistics suggesting that another firearm was the murder weapon. As a result of the defendants' failure to request the necessary testing, this analysis never materialized. These and other investigatory issues stemmed from "(1) the [defendants'] unwillingness to pay for the expert's services, (2) the [defendants'] failure to comprehend the case, and (3) the [defendants'] indifference toward the legal requirements imposed by the standard of proof, i.e., the threshold required to prove these issues."

During the habeas trial, no evidence was presented concerning the third-party perpetrator or ballistics that the plaintiff desired to include as part of his case. The only expert testimony during trial consisted of testimony concerning the presence of fingerprints in a blood-like substance found at the crime scene that was determined not to be the plaintiff's. On July 8, 2015, the habeas court denied the plaintiff's petition. Following the habeas court's decision, and after advising the defendants that he no longer would be using their ser-

vices, the plaintiff requested that the court appoint a public defender to represent him. The defendants filed a petition for certification to appeal without consulting the plaintiff. This petition was denied, but a pro se petition for certification filed separately by the plaintiff was granted. The habeas court's denial of the plaintiff's petition was upheld on appeal. See *Cooke* v. *Commissioner of Correction*, 194 Conn. App. 807, 810, 222 A.3d 1000 (2019), cert. denied, 335 Conn. 911, 228 A.3d 1041 (2020).

On January 2, 2018, the plaintiff brought the subject action against the defendants. He alleged that the defendants, in violation of their duties, neglected to prosecute his habeas petition fully and properly. Specifically, the plaintiff alleged that the defendants' failures "in investigation and comprehension of the facts of the case yielded a failure to present and prove prejudice" pursuant to *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). He further alleged that the defendants failed to prosecute his habeas petition fully and properly because the "aspects of the case that were investigated were misused by the defendants due to failures to comprehend the requisite law, facts and issues, and to have any coherent trial strategy," the "defendants failed to adequately prepare the plaintiff for trial," the "defendants failed to develop evidence in support of the habeas case," and the "defendants failed to properly prepare and present court documents, to include: motions, posttrial briefs, and postjudgment remedies." As a result of these alleged failures, the plaintiff claims that he lost a substantial amount of money that was paid to the defendants in the course of the action for services, costs, and disbursements incident to his habeas petition.

On March 7, 2018, the defendants filed a motion to dismiss the plaintiff's action on the ground that the court lacked subject matter jurisdiction. On September 17, 2018, the court issued its memorandum of decision, granting the motion as to claims arising out of the habeas proceedings.[6] The court concluded that the "plaintiff's underlying criminal conviction has not been invalidated through an appeal or a petition for writ of habeas corpus and, therefore, the plaintiff's claims relating to [the defendants'] representation in the habeas petition are not ripe. Recovery under his amended complaint would undermine the validity of his conviction and cannot be maintained." The court further concluded that, as long as the plaintiff's conviction stands, his claims "based on [the defendants'] representation in the habeas petition are hypothetical and the court lacks subject matter jurisdiction over these claims." Accordingly, the court granted the motion to dismiss the plaintiff's legal malpractice claim.

On appeal, the plaintiff contends that the trial court erred by dismissing his legal malpractice claim as unripe

by relying on the federal justiciability bar enumerated in *Heck* v. *Humphrey*, supra, 512 U.S. 477. Specifically, the plaintiff argues that *Heck* is distinguishable because no aspect of his amended complaint alleges damages for wrongful incarceration and that his damages, namely, moneys that the plaintiff paid to the defendants for their representation in the habeas proceedings, are actual rather than abstract or hypothetical. We disagree with the plaintiff.

The following legal principles guide our analysis. "[J]usticiability comprises several related doctrines . . . [including ripeness]. . . . A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction. . . . [B]ecause an issue regarding justiciability raises a question of law, our appellate review [of the ripeness of a claim] is plenary. . . . [T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . Accordingly, in determining whether a case is ripe, a trial court must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent [on] some event that has not and indeed may never transpire." (Internal quotation marks omitted.) *Taylor* v. *Wallace*, supra, 184 Conn. App. 47–48.

"In general, the plaintiff in an attorney malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages. . . . [T]he plaintiff typically proves that the defendant attorney's professional negligence caused injury to the plaintiff by presenting evidence of what would have happened in the underlying action had the defendant not been negligent." (Internal quotation marked omitted.) Id., 48.

In *Heck*, a prisoner brought an action pursuant to 42 U.S.C. § 1983 alleging that unlawful procedures had led to his arrest, that exculpatory evidence had knowingly been destroyed, and that unlawful identification procedures had been used at his trial. *Heck* v. *Humphrey*, supra, 512 U.S. 478–79. His complaint sought, among other things, compensatory and punitive monetary damages. Id., 479. He did not seek, however, release from custody. Id. Because his conviction had been affirmed and a federal habeas petition had been denied, the United States Court of Appeals for the Seventh Circuit affirmed the District Court's dismissal of his action. Id., 479–80. The plaintiff filed a petition for certiorari, which the United States Supreme Court granted. Id., 480.

The United States Supreme Court affirmed the judgment of dismissal. Id., 490. The court concluded that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on

direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . . A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the [D]istrict [C]ourt must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the [D]istrict [C]ourt determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." (Citation omitted; emphasis in original; footnotes omitted.) Id., 486–87.

In *Taylor* v. *Wallace*, supra, 184 Conn. App. 45–51, this court adopted the reasoning in *Heck* and affirmed the dismissal of the plaintiff's legal malpractice action. In *Taylor*, the plaintiff brought an action against the attorney who had been appointed to represent him during one of his habeas proceedings. Id., 45–46. In his complaint, the plaintiff alleged that the defendant provided deficient representation and used the plaintiff's name and circumstance to commit fraud against the state. Id., 46. The trial court dismissed the plaintiff's complaint on the grounds that the defendant was entitled to statutory immunity and that the plaintiff lacked standing. Id.

On appeal, this court affirmed the judgment of dismissal on the ground that the controversy was not ripe for adjudication. Id., 47. Citing the policy considerations as articulated in *Heck*, this court agreed that "if success in a tort action would necessarily imply the invalidity of a conviction, the action is to be dismissed unless the underlying conviction has been invalidated." Id., 51. Although the plaintiff in *Taylor* argued that he was not attacking his conviction and simply was seeking monetary damages, this court reasoned that "[o]ne difficulty with his position is that the injury, a necessary element in a tort action, is the conviction. To prove his malpractice action, he presumably would have to prove that he would not have sustained the injury had professional negligence not occurred. Thus, a successful result in this case would necessarily imply that the conviction was improper. Inconsistency of judgments is avoided by the requirement that the conviction first be vacated." Id., 52 n.5; see also *Dressler* v. *Riccio*, 205 Conn. App. 533, 551–52, A.3d (2021) (concluding plaintiff's legal malpractice and breach of fiduciary duty claims against former criminal defense attorney were not ripe for adjudication when success on claims neces-

sarily would undermine validity of his sentence); *Tierinni* v. *Coffin*, Superior Court, judicial district of Tolland, Docket No. CV-14-5005868-S (May 21, 2015) (60 Conn. L. Rptr. 450, 453) (reasoning that if court were "to adjudicate the plaintiff's claim during the pendency of the plaintiff's habeas petition, there is a risk that [the] court could determine the defendant's performance was insufficient while the habeas court determines it was sufficient, or vice versa"). Accordingly, we concluded, in *Taylor* v. *Wallace*, supra, 184 Conn. App. 52, that for "so long as the conviction stands, an action collaterally attacking the conviction may not be maintained." (Footnote omitted.)

In the present case, the plaintiff's legal malpractice claim is a collateral attack on his underlying conviction that has not been invalidated either on direct appeal; see *State* v. *Cooke*, supra, 134 Conn. App. 581; or through habeas proceedings. See *Cooke* v. *Commissioner of Correction*, supra, 194 Conn. App. 810. In his amended complaint, the plaintiff alleges that the defendants, in violation of their duties, neglected to prosecute his habeas petition fully and properly because the "aspects of the case that were investigated were misused by the defendants due to failures to comprehend the requisite law, facts and issues, and to have any coherent trial strategy," the "defendants failed to adequately prepare the plaintiff for trial," the "defendants failed to develop evidence in support of the habeas case," and the "defendants failed to properly prepare and present court documents, to include: motions, posttrial briefs, and postjudgment remedies." He further alleges that the defendants' failures "in investigation and comprehension of the facts of the case yielded a failure to present and prove prejudice" pursuant to *Strickland* v. *Washington*, supra, 466 U.S. 668. These allegations clearly implicate the sufficiency of the defendants' representation in the habeas proceedings and, to prove these allegations, the plaintiff presumably would have to demonstrate that he would not have sustained an injury of continued incarceration had professional negligence not occurred. See *Taylor* v. *Wallace*, supra, 184 Conn. App. 52 n.5. The allegations in the plaintiff's legal malpractice claim thus necessarily imply the invalidity of the plaintiff's conviction.

Moreover, allowing the plaintiff to proceed with his legal malpractice claim would create the risk of inconsistent judgments. The plaintiff has filed another petition for a writ of habeas corpus in which he alleges that the defendants rendered ineffective assistance of counsel during his previous habeas proceedings. See *Cooke* v. *Commissioner of Correction*, Superior Court, judicial district of Tolland, Docket No. CV-20-5000431-S. As a result, if the plaintiff were allowed to continue prosecuting his legal malpractice claim against the defendants, the trial court in this case and the habeas court conceivably could render inconsistent judgments

in which one court determines that the defendants' performance was deficient while the other court determines it was not deficient. See *Tierinni* v. *Coffin*, supra, 60 Conn. L. Rptr. 453. Accordingly, for as long as the plaintiff's conviction stands, his civil legal malpractice action against the defendants is not ripe for adjudication and may not be maintained. See *Taylor* v. *Wallace*, supra, 184 Conn. App. 52.

The plaintiff makes two overarching arguments in support of his contention that his legal malpractice claim is not unripe. First, he argues that the trial court erred in applying *Heck* to dismiss his claim as unripe because he does not seek damages for wrongful incarceration in his complaint. Second, he contends that the court should not have dismissed his legal malpractice claim because the *Heck* bar does not implicate the court's subject matter jurisdiction and, in any event, a ripeness determination should be determined under Connecticut common law and not under *Heck*. Neither of the plaintiff's arguments is persuasive.

As to the plaintiff's first argument, we first note that the court relied on *Taylor* to dismiss his legal malpractice claim rather than on *Heck*. Second, although the plaintiff claims that he is not seeking damages for wrongful incarceration and that, as a result, his complaint does not imply the invalidity of his conviction, a fair reading of his complaint indicates otherwise.[7] In his complaint, the plaintiff alleges that the defendants neglected to prosecute his habeas claims fully and properly by failing, inter alia (1) to comprehend the requisite law, facts, and issues and to have any coherent trial strategy, (2) to adequately prepare the plaintiff for trial, (3) to develop evidence in support of the plaintiff's habeas case, and (4) to properly prepare and present court documents such as motions, posttrial briefs, and postjudgment remedies. These allegations, if successfully proven, necessarily imply the invalidity of the plaintiff's conviction, and, thus, constitute an impermissible collateral attack on his conviction. See *Taylor* v. *Wallace*, supra, 184 Conn. App. 52. Consequently, the plaintiff's first argument fails.

The plaintiff's jurisdictional argument also is unpersuasive. Regardless of whether *Heck* implicates a court's subject matter jurisdiction, it is clear from the court's memorandum of decision that it based its jurisdictional determination on *Taylor* rather than on *Heck*. Citing *Taylor*, the court noted that "[u]ntil an underlying conviction has been invalidated, either through an appeal or a petition for writ of habeas corpus, a plaintiff's claim for legal malpractice against his criminal trial or habeas lawyer is not ripe for adjudication." Contrary to the plaintiff's claim, the trial court, therefore, did in fact rely on Connecticut common law when determining that it lacked subject matter jurisdiction over the plaintiff's legal malpractice claim. This court's

decision in *Taylor* clearly held that failure to invalidate an underlying criminal conviction implicates ripeness and, therefore, the court's subject matter jurisdiction. *Taylor* v. *Wallace*, supra, 184 Conn. App. 47–52. Accordingly, the trial court properly dismissed the plaintiff's legal malpractice claim for lack of subject matter jurisdiction.

## II

The plaintiff next claims that the court erred by dismissing as unripe his fraud claim for the same reasons that it dismissed his legal malpractice claim. Specifically, the plaintiff argues that his fraud allegations and the evidence necessary to prove them are completely independent from his legal malpractice allegations. We conclude that some of the allegations made in support of his fraud claim are significantly distinct from his legal malpractice claim allegations because, if successful, they would not demonstrate the invalidity of his underlying conviction.

The following additional facts, as alleged in the amended complaint, are relevant to our resolution of this claim. When the plaintiff retained the defendants, he paid them an initial retainer of $15,000. The retainer contract between the plaintiff and the defendants stated that the defendants would represent the plaintiff "in connection with any and all actions necessary to set aside his criminal conviction and obtain his vindication." The retainer contract further stated that Attorney Williams would bill at the rate of $500 per hour and that the associates at his firm would bill at a rate of $350 per hour. Attorney Williams represented to the plaintiff that this rate was standard and normal for his work in habeas cases. The plaintiff later discovered that Attorney Williams bills for habeas work based on a flat rate for services rendered, with the majority of his criminal and habeas clients paying a $5000 retainer for the prosecution of their whole case. The plaintiff further alleged that Attorney Williams was not forthcoming when asked about his other criminal cases, and the billing rate disparity was discovered only upon investigation by the plaintiff.

As the defendants' representation continued, they requested additional and larger payments. By the end of the defendants' representation, fees totaling $258,442.65 were incurred, including $169,121.44 that went toward investigation costs. Despite the sum spent on investigation costs, the expert investigation lagged behind as a result of the defendants' reluctance to pay the experts from the client trust fund. Moreover, because of an apparent fee dispute, evidence that was supposed to be analyzed by one or more of the habeas experts never occurred, including testing on third-party DNA and ballistics. The plaintiff did not discover the disparity in the expert investigation until the defendants' billing records were disclosed in September,

2015.

During the defendants' representation of the plaintiff, the plaintiff assisted with his case by preparing a draft pretrial brief for the habeas proceedings. He provided this brief to the defendants in November, 2014. The defendants used the majority of the plaintiff's draft pretrial brief in the final draft that was filed in the habeas court. The final draft of the pretrial brief was sixty-nine pages, and 72.62 percent of it was a direct cut and paste copy from the plaintiff's own draft pretrial brief. The plaintiff determined this through a line-by-line count of the two briefs. In total, 968 of the 1333 lines in the final pretrial brief were copied. The final draft of the pretrial brief contained errors that the plaintiff had made in his brief including typographical and citation errors, incomplete and missing arguments, and the failure to argue against the state's position. Even though the defendants copied a significant majority of the plaintiff's draft pretrial brief, they billed the plaintiff for 29.3 hours of work totaling $14,650. The plaintiff did not discover the hours that the defendants billed for the preparation of the final pretrial brief until September, 2015. As a result of the defendants' misrepresentation of information, the plaintiff incurred damages.

On March 7, 2018, the defendants moved to dismiss the fraud claim on the ground that all claims related to the habeas proceedings were not justiciable because the plaintiff's underlying criminal conviction had not been invalidated. The court granted the motion to dismiss the fraud claim, observing that, "[a]lthough the plaintiff seeks compensatory damages in the amount he alleges was improperly billed, it is clear that the crux of his claims is that his petition for a writ of habeas corpus was denied because of [the defendants'] acts and omissions in handling the habeas proceedings. Even the plaintiff's allegations regarding the billing circle back around to the habeas trial and its outcome–he alleges that [the defendants] [were] reticent about paying experts, which delayed investigation of the evidence, and declined to pay for or request the analysis of various evidence, evidence which was required to prove the plaintiff's innocence."

On appeal, the plaintiff argues that *Heck* v. *Humphrey*, supra, 512 U.S. 477, does not apply to his fraud claim because the allegations relating to his fraud claim and the evidence required to prove it are completely self-contained and limited to billing irregularities. In other words, the plaintiff argues that his fraud claim has no effect on the validity of his underlying criminal conviction. In response, the defendants contend that the plaintiff's fraud claim merely repeats the legal malpractice claim and attempts "to cloak that in the garb of an action for fraud." As a result, in the defendants' view, the same reasoning that compelled the dismissal of the legal malpractice claim also compels the dismissal of the plain-

tiff's fraud claim. Although we agree with the defendants that some of the allegations that the plaintiff makes in support of his fraud claim properly were dismissed, we disagree with the defendants that all of them necessarily imply the invalidity of the plaintiff's conviction.

"Fraud consists [of] deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." (Internal quotation marks omitted.) *Reid* v. *Landsberger*, 123 Conn. App. 260, 281, 1 A.3d 1149, cert. denied, 298 Conn. 933, 10 A.3d 517 (2010). There is no Connecticut authority that addresses a claim of fraudulent billing in the context of a dispute between an incarcerated individual and his or her criminal or habeas counsel. Authority from other jurisdictions, however, provides guidance for our resolution of this matter.

In *Bird, Marella, Boxer & Wolpert* v. *Superior Court*, 106 Cal. App. 4th 419, 421,130 Cal. Rptr. 2d 782 (2003) (*Bird*), the California Court of Appeal considered whether a convicted criminal defendant must allege actual innocence in order to state a cause of action against former defense counsel for breach of contract and related torts arising from a fee dispute between the parties. In *Bird*, the plaintiff had retained the defendants by written contract to represent him in a criminal matter. Id. The defendants represented him from April to December, 2000, after which the plaintiff discharged them and retained a different firm. Id. In April, 2001, the plaintiff was convicted of various criminal offenses. Id. Following his conviction, the plaintiff brought an action against his former attorneys and their firm alleging breach of contract, breach of fiduciary duty, fraud, and money had and received. Id. In his complaint, he did not allege that he was innocent of the charges of which he was convicted and he specifically renounced any claim that the defendants were negligent in their representation. Id. Instead, the plaintiff alleged that the defendants breached a provision of the retainer agreement providing that the defendants would charge him only for " 'services reasonably required' " and charged him an unconscionable fee by, among other things, (1) charging him for work the defendants did not perform, (2) grossly overcharging him for work they did perform, (3) inflating/padding the time charged to him, (4) manufacturing work not to advance his cause but instead solely to increase their fees, (5) over-charging and double charging for costs, and (6) charging for costs not incurred on his behalf. Id., 422. The plaintiff also alleged that the defendants breached specific provisions of the

contract, including provisions (1) to bill him in minimal units of a tenth of an hour, (2) to use paralegals for tasks which did not require attorneys, (3) to bill him only for costs incurred in performing legal services under the agreement, and (4) to bill travel costs only for out of town travel. Id.

The defendants demurred[8] on each cause of action on the ground that the plaintiff did not allege that he was actually innocent of the crimes for which he was convicted. Id., 423. The trial court overruled the demurrers on the ground that the plaintiff's action was not a malpractice action and that the requirement as articulated in *Wiley* v. *County of San Diego*, 19 Cal. 4th 532, 966 P.2d 983, 79 Cal. Rptr. 2d 672 (1998), that a convicted criminal defendant must prove actual innocence in order to state a cause of action for legal malpractice against former defense counsel, was inapposite. *Bird, Marella, Boxer & Wolpert* v. *Superior Court*, supra, 106 Cal. App. 4th 424. The defendants then brought a petition for a writ of mandate ordering the trial court to vacate its ruling and to issue a new ruling sustaining their demurrers without leave to amend. Id. The California Court of Appeal issued an order to show cause and stayed further proceedings in the trial court. Id.

The court in *Bird* upheld the overruling of the defendants' demurrer. Id., 432. In so holding, the court first distinguished the plaintiff's claims from other California cases in which the courts had held that a convicted criminal defendant must establish actual innocence to state a claim for legal malpractice against former defense counsel. The court noted that the actual innocence and postconviction exoneration requirements were based principally on public policy considerations. Id., 424. Specifically, the "requirement of actual innocence prevents those convicted of crime from taking advantage of their own wrongdoing and shift[ing] much, if not all, of the punishment . . . for their criminal acts to their former attorneys. Requiring actual innocence and postconviction exoneration also recognizes the fact that [i]n the criminal malpractice context . . . a defendant's own criminal act remains the ultimate source of his predicament irrespective of counsel's subsequent negligence. In sum . . . the notion of paying damages to a plaintiff who actually committed the criminal offense solely because a lawyer negligently failed to secure an acquittal is of questionable public policy and is contrary to the intuitive response that damages should only be awarded to a person who is truly free from any criminal involvement." (Footnotes omitted; internal quotation marks omitted.) Id., 424–25.

The court in *Bird* further noted that practical considerations and " 'pragmatic difficulties' " supported a requirement of actual innocence and postconviction exoneration. Id., 425. "[A] civil matter lost through an attorney's negligence is lost forever . . . . In contrast,

a criminal defense lost through an attorney's negligence can be corrected by postconviction relief in the form of an appeal or writ relief. Pragmatic difficulties include the difficulty in quantifying damages as, for example, in the case of a defendant whose counsel's incompetence results in a longer sentence and the confusion which would arise when a jury has to decide by a preponderance of the evidence whether, but for the negligence of his attorney, another jury could not have found the client guilty beyond a reasonable doubt. Finally, the requirement for postconviction exoneration protects against inconsistent verdicts and promotes judicial economy by collaterally estopping frivolous malpractice claims in cases where the defendant has already been denied postconviction relief on the basis of ineffective assistance of counsel." (Footnotes omitted; internal quotation marks omitted.) Id.

The court then concluded that a fee dispute between a convicted criminal defendant client and his former counsel does not invoke the policy and practical considerations that arise from a malpractice action. Id., 428. In a fee dispute, the "client does not seek to shift the punishment for his criminal acts to his former counsel nor is the client's own criminal act the ultimate source of his predicament as evidenced by the fact a client *acquitted* of the criminal charges against him could have suffered the same unlawful billing practices as [the plaintiff]. Furthermore a fee dispute between client and counsel does not give rise to the practical problems and pragmatic difficulties inherent in a malpractice action brought by a convicted criminal defendant client. In litigation over a fee dispute there is no difficulty in quantifying damages for a wrongful conviction or a longer prison sentence and there is no problem of applying a standard of proof within a standard of proof. A judgment for the client in a fee dispute is not inconsistent with a judgment for the [p]eople in the criminal case. And, there is no duplication of effort since a fee dispute obviously cannot be resolved through postconviction relief." (Emphasis in original; internal quotation marks omitted.) Id.

Moreover, the court in *Bird* explained that, "just as there are important public policy reasons for applying the actual innocence rule to cases involving negligent criminal representation, there are important public policy reasons for not applying the rule to bar cases involving fee disputes between criminal defendant clients and their attorneys." Id., 430. "An attorney owes the client a fiduciary duty of the very highest character. This fiduciary duty requires fee agreements and billings must be fair, reasonable and fully explained to the client. No fee agreement is valid and enforceable without regard to considerations of good conscience, fair dealing, and . . . the eventual effect on the cost to the client." (Footnotes omitted; internal quotation marks omitted.) Id., 430–31. The fiduciary duty to charge only fair, reason-

able, and conscionable fees applies to all members of the bar, including criminal defense attorneys. Id., 431. As a result, the court concluded that if "only actually innocent clients can challenge their defense counsel's excessive or unlawful fees then actually guilty clients could never seek redress against even the most unscrupulous attorneys. Moreover, even clients acquitted of the charges against them could not seek redress unless they could prove they were actually innocent of the charges. We can find no rational basis for affording criminal defense attorneys a virtually impregnable shield against suits to recover excessive or unlawful fees. Nor can we find any rational basis for affording civil litigants, no matter how morally blameworthy they may be, a remedy for exactly the same unlawful conduct, double-billing, inflating hours, etc., for which most criminal litigants are denied a remedy." (Footnote omitted; internal quotation marks omitted.) Id.

In light of these policy considerations, the court in *Bird* concluded that "in a suit by a convicted criminal defendant client against his or her attorney to enforce the primary rights to be billed in accordance with the retainer agreement and to be free from unethical or fraudulent billing practices on the part of defense counsel the client is not required to allege and prove actual innocence of the charged crimes or postconviction exoneration." Id., 432. Although some of the plaintiff's allegations implicated the quality of the legal services provided,[9] the court found that others were not directed at the quality of the work performed but rather at its quantity.[10] Accordingly, the court discharged the order to show cause and directed the trial court to strike from the complaint only the allegations that implicated the quality of the defendants' work. Id.

Similar to *Bird*, courts in other jurisdictions have permitted a criminally convicted plaintiff to pursue an action against his or her former defense counsel in certain circumstances. In *Labovitz* v. *Feinberg*, 47 Mass. App. 306, 314, 713 N.E.2d 379 (1999), the Massachusetts Appeals Court held that portions of a criminally convicted plaintiff's breach of contract claim against his former counsel could survive a motion for summary judgment. Although the majority of his breach of contract claim failed because the plaintiff's underlying conviction had not been invalidated, the plaintiff's affidavit submitted in opposition to the defendants' motion for summary judgment contained assertions that his fee arrangement with the defendants " 'would cover all matters up to an appeal' " but that he was told to secure new counsel to file a motion to withdraw his plea and for the sentencing phase. Id. The court held that this uncontroverted assertion, "viewed in the light of the defendants' evidence that they would represent him in all proceedings in the [f]ederal District Court, except trial . . . creates a genuine issue of material fact whether [the plaintiff] was harmed by the defendants

when they did not file and pursue a motion to withdraw his guilty plea, thereby causing him to incur successor attorney's fees of $15,000 with respect to that motion." (Citation omitted.) Id. Accordingly, the court reversed the trial court's granting of summary judgment as to the portion of the plaintiff's breach of contract claim that specifically related to the defendants' failure to file and argue a motion to withdraw the guilty plea and to represent him at sentencing. Id.; see also *Winniczek* v. *Nagelberg*, 394 F.3d 505, 509 (7th Cir. 2005) (rule requiring convicted plaintiff to prove actual innocence as part of legal malpractice claim does not bar breach of contract action when wrong alleged is overcharging rather than conviction); *Fuller* v. *Partee*, 540 S.W.3d 864, 872 (Mo. App. 2018) (concluding trial court erred in dismissing breach of contract claim when plaintiff's claim did not allege actual innocence or unsatisfactory representation and instead alleged that plaintiff had contract clearly listing certain legal services that would be provided but that ultimately were not); *Gonyea* v. *Scott*, 541 S.W.3d 238, 247–48 (Tex. App. 2017) (concluding rule requiring convicted criminal to prove exoneration prior to bringing legal malpractice claim does not extend to circumstances where criminal client sues former counsel for recovery of restitution damages when he contracts with counsel to perform specific work and attorney fails to provide that representation).

In the present case, some of the allegations that the plaintiff makes in support of his fraud claim do address the quality and effectiveness of the defendants' representation. Specifically, the plaintiff's allegations that the expert investigation lagged behind as a result of the defendants' reluctance to pay the experts from the client trust fund and that, because of an apparent fee dispute, evidence that was supposed to be analyzed by one or more of the habeas experts never occurred, including testing on third-party DNA and ballistics, address the quality of the defendants' performance. These allegations, although framed in the billing context, ultimately would require the plaintiff to prove that the defendants' representation was deficient. Consequently, these allegations are controlled by *Taylor*, and the trial court properly dismissed them because they implicate the validity of the plaintiff's conviction and his conviction has not been invalidated. See *Taylor* v. *Wallace*, supra, 184 Conn. App. 51.

Some of the plaintiff's other allegations made in support of his fraud claim, however, do not challenge the quality of the defendants' representation. In his amended complaint, the plaintiff alleges that Attorney Williams misrepresented that the retainer contract that he entered into with the plaintiff was standard and normal for his work in habeas cases. The plaintiff also alleges that the defendants billed him for 29.3 hours of work totaling $14,650 for their work on the pretrial brief despite the fact that 72.62 percent of the brief was a

direct cut and paste copy from the draft pretrial brief that the plaintiff had prepared himself. These allegations assert that the defendants overcharged for their work by misrepresenting their standard rate for habeas clients, inflated or padded the hours worked on matters in connection with their representation of the plaintiff, or charged the plaintiff for work they did not perform. Like the allegations in *Bird* that the California Court of Appeal allowed; *Bird, Marella, Boxer & Wolpert* v. *Superior Court*, supra, 106 Cal. App. 4th 429–32; these allegations assert allegedly fraudulent or improper billing practices of the defendants here.

We are persuaded that the policy and practical considerations behind the requirement that an action that necessarily implies the invalidity of a conviction must be dismissed if the underlying conviction has not been invalidated do not apply to the fee dispute allegations in the present case. As the court in *Bird* noted, in a fee dispute, the criminally convicted plaintiff is not seeking to shift the responsibility for and consequences of his criminal acts to his former counsel, nor is the client's own criminal act the ultimate source of his predicament. Id., 428. Moreover, a judgment for a criminally convicted plaintiff in a fee dispute is not inconsistent with the judgment of his criminal conviction. Id. If a criminally convicted plaintiff could challenge defense counsel's excessive or unlawful fees only if he or she is able to prove the invalidity of the underlying conviction, then "guilty clients could never seek redress against even the most unscrupulous attorneys." (Internal quotation marks omitted.) Id., 431. We agree with the court in *Bird* that there is "no rational basis for affording criminal defense attorneys a virtually impregnable shield against suits to recover excessive or unlawful fees. Nor can we find any rational basis for affording civil litigants, no matter how morally blameworthy they may be, a remedy for exactly the same unlawful conduct, double-billing, inflating hours, etc., for which most criminal litigants are denied a remedy." Id. Accordingly, we conclude that the allegations that the plaintiff makes in support of his fraud claim that merely constitute a fee dispute and that do not implicate the validity of his underlying conviction are not controlled by *Taylor*, and that dismissal of his fraud claim was unwarranted.

The judgment is reversed with respect to the claim of fraud relating solely to a fee dispute, and the case is remanded with direction to deny the motion to dismiss that claim and for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] Attorney Williams is representing himself and his firm in this appeal.

[2] The counts for which the court denied the motion to dismiss were counts one, three, five, and seven. Count eight of the plaintiff's amended complaint alleges a claim for breach of contract. The plaintiff's breach of contract claim contains allegations relating to the defendants' representation in both the federal civil rights action and the habeas proceedings. As a result, the trial court also denied the motion to dismiss count eight "to the extent it

is based on the circumstances of the plaintiff's federal civil rights action."

[3] The counts of the plaintiff's amended complaint that related to the defendants' representation of the plaintiff in the habeas proceedings were counts two, four, six, and portions of count eight.

[4] The plaintiff filed a motion to reargue/reconsider, a motion for permission to file an interlocutory appeal, a motion to consolidate, and a motion to modify. These motions do not affect our analysis of the issues that the plaintiff raises on appeal.

[5] In his notice of withdrawal of certain counts of the complaint, the plaintiff stated that he was withdrawing counts "one, three, five, seven (all remaining counts not previously dismissed . . . ." The plaintiff did not specify in his withdrawal form, however, whether he was withdrawing the portion of count eight that alleged a breach of contract claim against the defendants based on their representation in the federal civil rights action. As a result, on September 8, 2020, we ordered the parties to file memoranda addressing the issue of whether this appeal should be dismissed for lack of a final judgment. The plaintiff filed his memorandum opposing the dismissal of the appeal, but the defendants filed no memorandum. After reviewing the plaintiff's memorandum, a panel of this court ordered the court's own motion to dismiss marked off, concluding that the plaintiff's withdrawal form encompassed the portion of count eight alleging a breach of contract claim with respect to the defendants' representation in the federal civil rights action.

[6] See footnote 2 of this opinion.

[7] We note that the "interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . In exercising that review, [w]e take the facts to be those alleged in the complaint . . . and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Moreover, we are mindful that pleadings must be construed broadly and realistically, rather than narrowly and technically. . . . [I]n determining the nature of a pleading filed by a party, we are not bound by the label affixed to that pleading by the party." (Citations omitted; internal quotation marks omitted.) *Manere* v. *Collins*, 200 Conn. App. 356, 366, 241 A.3d 133 (2020).

[8] In California, a demurrer is used to test the sufficiency of a pleading as a matter of law. *California Logistics, Inc.* v. *California*, 161 Cal. App. 4th 242, 247, 73 Cal. Rptr. 3d 825 (2008).

[9] The court found that the plaintiff's allegations that the defendants grossly manufactured work, used higher priced attorneys to perform paralegal work, and provided services that were not worth what they charged for them implicated the quality of the legal services provided. *Bird, Marella, Boxer & Wolpert* v. *Superior Court*, supra, 106 Cal. App. 4th 429.

[10] The court found that the plaintiff's allegations that the defendants charged the plaintiff for work they did not perform, grossly overcharged the plaintiff for work they did perform, and inflated/padded the time charged to the plaintiff all implicated the quantity of the work the defendants performed rather than the quality. *Bird, Marella, Boxer & Wolpert* v. *Superior Court*, supra, 106 Cal. App. 4th 429.