# IAN T. COOKE *v.* JOHN R. WILLIAMS ET AL.
## (SC 20719)

Robinson, C. J., and McDonald, D'Auria, Mullins and Ecker, Js.

*Syllabus*

The plaintiff, who previously had been convicted of murder, among other crimes, sought to recover damages from the defendants, his former attorney and his law firm, for, inter alia, their alleged legal malpractice and fraud while representing him in connection with a federal civil rights action and a separate, state habeas action. In his unsuccessful habeas action, the plaintiff alleged that the attorney who had represented him at his murder trial provided ineffective assistance of counsel. In the present malpractice action, the plaintiff claimed, inter alia, that the defendants had failed to prosecute his habeas petition fully and properly. The trial court granted the defendants' motion to dismiss the plaintiff's claims relating to the habeas action, concluding that those claims sounded in legal malpractice and were not ripe for adjudication because the plaintiff's underlying criminal conviction had not been invalidated either on appeal or in a postconviction proceeding. The plaintiff appealed to the Appellate Court, asserting that the trial court had improperly dismissed his legal malpractice claim. The plaintiff also contended that the Appellate Court had improperly dismissed his fraud claim because it was distinct from any claim of legal malpractice. The Appellate Court affirmed the trial court's judgment with respect to the plaintiff's legal malpractice claim, but it reversed with respect to the fraud claim, reasoning that the fraud claim was distinct from the legal malpractice claim because the former did not challenge the validity of the plaintiff's under-

lying conviction. The plaintiff, on the granting of certification, appealed to this court.

*Held* that, as a matter of form, the Appellate Court improperly affirmed the trial court's dismissal of the plaintiff's legal malpractice claim for lack of subject matter jurisdiction, this court having concluded that appellate or postconviction relief from the plaintiff's underlying conviction was a necessary element of his claim for malpractice against his former attorneys and that the plaintiff's failure to plead or prove that he had obtained such relief meant that his malpractice claim was insufficient as a matter of law rather than subject to dismissal for lack of jurisdiction:

This court disagreed with the holding in *Taylor* v. *Wallace* (184 Conn. App. 43), on which the Appellate Court relied in the present case, that a criminally convicted plaintiff's failure to obtain appellate or postconviction relief from his conviction prior to commencing a criminal malpractice action, that is, a legal malpractice action against an attorney who previously had represented the criminally convicted plaintiff in a criminal or habeas case, renders the action unripe and presents an issue of justiciability that implicates a court's subject matter jurisdiction.

Rather, this court determined that, because legal malpractice claims are of the type of claims that courts have the authority to adjudicate, the question was not whether a court is competent to adjudicate the controversy between the parties or whether there is a live controversy between the parties but, rather, whether a criminally convicted plaintiff who had not obtained appellate or postconviction relief from his conviction has alleged facts sufficient to state a valid cause of action for criminal malpractice, and whether that requirement has been met is a matter concerning sufficiency of the pleadings.

In determining the necessary elements of a criminal malpractice claim, this court observed that the adjudication of causation and harm in a criminal malpractice action ordinarily will necessarily implicate the finding of the criminally convicted plaintiff's guilt in the underlying criminal case, and a verdict in favor of the plaintiff in the criminal malpractice action would undermine the validity of his criminal conviction.

Accordingly, this court joined the majority of other jurisdictions that have addressed the issue and adopted the exoneration rule, and, pursuant to that rule, when proof of a criminal malpractice claim requires a plaintiff to prove that his former attorney's negligence was a proximate cause of his underlying criminal conviction, the claim is insufficient as a matter of law unless the plaintiff has obtained appellate or postconviction relief from his underlying conviction.

In adopting the exoneration rule, this court reasoned that such a rule supports the judicial policy against inconsistent judgments arising out of the same transaction, which would occur if a plaintiff whose criminal

Cooke *v.* Williams

conviction had not been overturned were to prevail in a criminal malpractice action alleging that, in the absence of the attorney's negligence, the plaintiff would not have been convicted.

This court also reasoned that there are other mechanisms to obtain redress for the negligence of criminal defense counsel, including the elaborate remedial system embodied in Connecticut's postconviction review laws, which provide comprehensive and robust procedures that are intended to address allegations that a criminal conviction was the result of the ineffective assistance of counsel, thereby ensuring that any wrongs resulting from such ineffective assistance will be identified and addressed.

This court made clear that, if a plaintiff's claim in a criminal malpractice action does not require findings that would undermine the validity of the underlying conviction, such a claim would not be barred for lack of exoneration, and, in the present case, the Appellate Court correctly concluded that the plaintiff's fraud claim, which related to the plaintiff's fee dispute with the defendants, could proceed, as that claim did not challenge the validity of the plaintiff's conviction.

To prevail on his malpractice claim, however, the plaintiff was required to prove that the defendants' conduct was the proximate cause of his harm, namely, the denial of his habeas petition and continued incarceration, the plaintiff necessarily would have had to prove that he would have prevailed in his habeas action if the defendants' negligence had not occurred, and such a claim necessarily challenged the validity of the plaintiff's underlying conviction.

Accordingly, because the plaintiff could not establish that he had obtained appellate or postconviction relief from his conviction, he failed to state a cognizable claim of criminal malpractice against the defendants, and, accordingly, the plaintiff's criminal malpractice claim should have been the subject of a motion to strike rather than a motion to dismiss.

(*One justice concurring separately*)

Argued September 14, 2023—officially released June 25, 2024

*Procedural History*

Action to recover damages for, inter alia, legal malpractice, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Markle, J.*, granted in part the defendants' motion to dismiss and rendered judgment thereon; thereafter, the plaintiff withdrew the remaining counts of his complaint and appealed to the Appellate Court, *Bright, C. J.*, and *Suarez* and *DiPentima, Js.*, which reversed in

Cooke *v.* Williams

part the trial court's judgment and remanded the case to that court with direction to deny the motion to dismiss only as to the plaintiff's claim of fraud relating solely to a fee dispute, and the plaintiff, on the granting of certification, appealed to this court. *Reversed in part*; *further proceedings*.

*Michael W. Brown*, for the appellant (plaintiff).

*William Tong*, attorney general, and *Stephen R. Finucane*, assistant attorney general, filed a brief for the state of Connecticut as amicus curiae.

*Kenneth Rosenthal* and *Audrey Felsen* filed a brief for the Connecticut Criminal Defense Lawyers Association as amicus curiae.

*Opinion*

MULLINS, J. In *Taylor* v. *Wallace*, 184 Conn. App. 43, 51–52, 194 A.3d 343 (2018), the Appellate Court adopted what is generally referred to as the exoneration rule for civil claims seeking relief against a plaintiff's former criminal defense or habeas counsel for harm allegedly caused by the lawyer's legal malpractice.[1] The exoneration rule[2] provides that appellate or postconviction relief is a necessary element of a claim for criminal malpractice if that claim challenges the validity of an underlying conviction by requiring proof that the attorney's negligence was the cause of the plaintiff's conviction as a defendant in the underlying criminal case. Id. The Appellate Court in *Taylor* further explained that the failure to obtain appellate or postconviction relief renders the criminal malpractice claim unripe and, therefore, not justiciable. Id. Applying the exoneration rule to the present case,

[1] We use the term "criminal malpractice" to refer to claims in which a lawyer is sued for legal malpractice by a client he or she has previously represented in a criminal or habeas case.

[2] "Exoneration," as the term is used in this context, means that a convicted person has obtained appellate or postconviction relief from his or her conviction.

Cooke *v.* Williams

the Appellate Court upheld the trial court's dismissal of the claim of criminal malpractice filed by the plaintiff, Ian T. Cooke, against the defendants, John R. Williams and John R. Williams and Associates, LLC, the attorney and law firm that represented the plaintiff in his habeas case.[3] *Cooke* v. *Williams*, 206 Conn. App. 151, 165, 259 A.3d 1211 (2021).

This case presents our first opportunity to address whether to adopt the exoneration rule in Connecticut. After review, we join the majority of other jurisdictions that also have adopted the exoneration rule. In doing so, we explain herein that appellate or postconviction relief from the underlying criminal conviction is a necessary element of a criminal malpractice claim if that claim requires findings that would undermine the validity of the criminal conviction. To avoid this unacceptable scenario, we hold that a plaintiff must plead and prove that he or she has obtained a favorable resolution of the underlying criminal case to state a cognizable claim of criminal malpractice. We also clarify that the failure to plead and prove exoneration is not an issue of justiciability and, thus, does not implicate the subject matter jurisdiction of the court. Instead, under our rules of practice, the failure to state a legally sufficient claim is subject to a motion to strike, rather than a motion to dismiss.

In the present case, we conclude that, because the plaintiff's claim of criminal malpractice necessarily requires findings that would undermine the validity of his underlying conviction and he has not obtained appellate or postconviction relief, he has not alleged a cognizable claim of criminal malpractice. We reverse the Appellate

---

[3] The defendants did not participate in this appeal. Pursuant to Practice Book § 67-7, we granted the application of the state of Connecticut and the Connecticut Criminal Defense Lawyers Association to appear and file briefs as amici curiae and to appear at oral argument to respond to questions by this court.

Cooke *v.* Williams

Court's judgment dismissing the criminal malpractice claim for lack of subject matter jurisdiction and remand for further proceedings consistent with this opinion.

The following facts and procedural history, as set forth by the Appellate Court, are relevant to our resolution of this appeal. In 2006, the plaintiff shot and killed two people with a sawed-off shotgun. See *State* v. *Cooke*, 134 Conn. App. 573, 575–76, 39 A.3d 1178, cert. denied, 305 Conn. 903, 43 A.3d 662 (2012). Four years later, he was convicted, after a jury trial, of two counts of murder, among other crimes, and sentenced to a term of life imprisonment without the possibility of release. Id., 576–77. The plaintiff appealed his conviction, which the Appellate Court affirmed. Id., 581.

In 2011, as a self-represented party, the plaintiff filed a petition in state court for a writ of habeas corpus, alleging ineffective assistance of his criminal trial counsel. *Cooke* v. *Williams*, supra, 206 Conn. App. 153. In that petition, the plaintiff had alleged that his criminal trial counsel was ineffective due to "his failures to investigate and to present a defense, to use expert witnesses, particularly experts in forensic science, and to ensure the plaintiff's competency to stand trial." Id., 157. Shortly after he filed the petition, the plaintiff retained the defendants to represent him. Id.

Around the same time, the plaintiff, also initially as a self-represented party, commenced a civil rights action in federal court, alleging numerous constitutional and tort claims stemming from the conditions of his pretrial incarceration. Id., 153. The state habeas petition did not proceed while proceedings concerning the federal petition were ongoing. See id., 153–54. Ultimately, the defendants agreed to represent the plaintiff in the federal civil rights action as well. Id., 153. In 2014, the federal civil rights action was settled. Id.

Cooke *v.* Williams

After the federal action settled, the habeas court proceeded with the trial on the plaintiff's pending 2011 state habeas petition. Id., 154. At the habeas trial, the plaintiff wanted to call an expert witness who would present evidence of a third-party perpetrator and ballistics suggesting that a firearm other than that posited by the prosecution was the murder weapon. Id., 157. The defendants, however, presented no such evidence. Id. Following the trial, the habeas court rejected the plaintiff's claim of ineffective assistance of counsel and consequently denied the petition for a writ of habeas corpus. See id., 154.

Thereafter, the plaintiff, as a self-represented party, commenced the present action against the defendants based on their representation of him in both the federal civil rights action and the habeas proceeding. Id. In his amended eight count complaint, the plaintiff asserted claims for legal malpractice, negligence, fraud, breach of the covenant of good faith and fair dealing, and breach of contract.[4] See id. He alleged that the defendants, in violation of their duties, neglected to prosecute his habeas petition fully and properly.

Specifically, the plaintiff alleged that the defendants' failures "in investigation and comprehension of the facts of the case yielded a failure to present and prove

_____

[4] The plaintiff's complaint included the following counts against the defendants: (1) legal malpractice for their representation of him in his federal civil rights action; (2) criminal malpractice for their representation of him in his state habeas action; (3) negligence for their representation of him in his federal civil rights action; (4) negligence for their representation of him in his state habeas action; (5) fraud/unjust enrichment for their representation of him in his federal civil rights action; (6) fraud for their representation of him in his state habeas action; (7) breach of the implied covenant of good faith and fair dealing for their representation of him in his federal civil rights action; and (8) breach of contract for their representation of him in both the federal civil rights action and the state habeas proceeding. All of the claims regarding the federal civil rights action have subsequently been withdrawn. See footnote 5 of this opinion.

Cooke *v.* Williams

prejudice" pursuant to *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). He further alleged that the defendants failed to prosecute his habeas action fully and properly because the "aspects of the case that were investigated were misused by the defendants due to failures to comprehend the requisite law, facts and issues, and to have any coherent trial strategy . . . ." The plaintiff also alleged that the "defendants failed to adequately prepare the plaintiff for trial," "failed to develop evidence in support of the habeas case," and "failed to properly prepare and present court documents, [including] . . . motions, posttrial briefs, and postjudgment remedies." The plaintiff claimed that he "suffered financial loss and/or hardship and/or mental and emotional distress as a result."

For these alleged failures, the plaintiff sought monetary damages, as well as injunctive and declaratory relief. In particular, he requested that the defendants be suspended or disbarred from the practice of law and that the trial court "[i]ssue a declaratory ruling stating that the plaintiff's right to counsel pursuant to the sixth amendment to the [United States] constitution and article first, § 8, of the Connecticut constitution, as well as the common-law rights to counsel, [had] been violated wherein the defendant[s] provided ineffective assistance of counsel."

The defendants filed a motion to dismiss the plaintiff's action. They argued that the plaintiff's claims relating to the state habeas proceedings were not justiciable because his underlying criminal conviction had not been vacated through either a direct appeal or a successful petition for a writ of habeas corpus.[5]

[5] The defendants also asserted that the plaintiff's claims related to his federal civil rights action should be dismissed because they were barred by the statute of limitations. Ultimately, the trial court denied the motion to dismiss for the counts related to his federal civil rights action (counts one, three, five, and seven and count eight "to the extent it is based on the

Cooke *v.* Williams

After hearing argument, the trial court issued its memorandum of decision, granting the motion to dismiss as to all of the plaintiff's claims relating to the habeas proceedings. The court rejected the plaintiff's argument that his present action was independent of his underlying criminal conviction because he was not challenging his conviction but was, instead, seeking monetary damages, in part, for the fraudulent billing by the defendants for work they had not done.[6] Ultimately, relying on *Taylor*, the trial court concluded that all of the plaintiff's claims against the defendants sounded in legal malpractice and were not ripe for adjudication because his underlying criminal conviction had not been invalidated.

The plaintiff appealed to the Appellate Court. He claimed that the trial court improperly dismissed (1) his criminal malpractice claim by misapplying the justiciability bar to criminal malpractice claims set forth in *Taylor*, a bar originally articulated in *Heck* v. *Humphrey*, 512 U.S. 477, 486–87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), and (2) his fraud claim because it was distinct from his claim of criminal malpractice. *Cooke* v. *Williams*, supra, 206 Conn. App. 153. With respect to the criminal malpractice claim, the Appellate Court affirmed the judgment of the trial court. Id., 165, 177. The Appellate Court reasoned that, "[t]o prove his malpractice action, [the plaintiff] presumably would have [had] to prove that he would not have sustained the injury had professional negligence not occurred. Thus, a successful result in this case would necessarily imply that the conviction was improper. Inconsistency of

circumstances of the plaintiff's federal civil rights action"). The trial court reasoned that a statute of limitations special defense must be specially pleaded and cannot be raised by a motion to dismiss. Ultimately, the plaintiff withdrew the counts of his complaint related to his federal civil rights action, and, therefore, those claims are not the subject of this appeal.

[6] The plaintiff alleged that, in total, he incurred $258,442.65 in charges that were fraudulent.

Cooke *v.* Williams

judgments is avoided by the requirement that the conviction first be vacated." (Internal quotation marks omitted.) Id., 162. The Appellate Court explained that "the plaintiff's [criminal] malpractice claim [was] a collateral attack on his underlying conviction that ha[d] not been invalidated either on direct appeal . . . or through habeas proceedings." (Citation omitted.) Id., 162–63. On the basis of this analysis, the Appellate Court concluded that the plaintiff's criminal malpractice claim was not ripe for adjudication. Id., 165.

The Appellate Court reached a different conclusion with respect to the plaintiff's claim of fraud relating to the fee dispute. Id., 165–66. The Appellate Court reasoned that the plaintiff's fraud claim was distinct from his criminal malpractice claim because proof of the fraud claim did not challenge the validity of his underlying conviction. Id., 166. As a result, the Appellate Court reversed the judgment of the trial court with respect to the claim of fraud and remanded the case to the trial court with direction to deny the motion to dismiss as to the fraud claim.[7] Id., 177. This appeal followed.

We granted the plaintiff's petition for certification to appeal from the judgment of the Appellate Court. *Cooke* v. *Williams*, 343 Conn. 919, 919–20, 275 A.3d 213 (2022). Our grant of certification was limited to the following issue: "Did the Appellate Court correctly conclude that the justiciability bar set forth in *Heck* v. *Humphrey*, [supra, 512 U.S. 477], which the Appellate Court adopted in *Taylor* v. *Wallace*, [supra, 184 Conn. App. 43], required dismissal of the plaintiff's [criminal] malpractice claims against his former habeas counsel as unripe in the absence of prior invalidation of the plaintiff's underlying criminal conviction?" *Cooke* v. *Williams*, supra, 343 Conn. 920.

---

[7] The plaintiff's claim of fraud is not part of the present appeal.

Cooke *v.* Williams

After having reviewed the plaintiff's brief and the briefs of the amici curiae, we recognize that the certified question does not adequately frame the more fundamental issue posed by the present case, that is, what elements must a criminally convicted plaintiff plead and prove to assert a cognizable cause of action of criminal malpractice against his habeas or criminal trial counsel. Consequently, we reformulate the certified question to conform to the issue actually presented. See, e.g., *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 191–92, 884 A.2d 981 (2005) (this court may reframe certified question to more accurately reflect issue presented). The specific issue before us is one of first impression for this court: whether appellate or postconviction relief from the underlying conviction is a necessary element of a claim of criminal malpractice filed by a criminally convicted plaintiff.

Before we tackle that issue, and to provide some clarity on our ultimate conclusion, it is helpful to first examine *Heck* v. *Humphrey*, supra, 512 U.S. 477, and its relationship to the Appellate Court's adoption of what it called a "justiciability bar" for criminal malpractice claims filed by criminally convicted plaintiffs. *Cooke* v. *Williams*, supra, 206 Conn. App. 153. In *Heck*, the United States Supreme Court examined whether a prisoner may challenge the constitutionality of his conviction in an action for damages under 42 U.S.C. § 1983. *Heck* v. *Humphrey*, supra, 487. In that case, the petitioner, Roy Heck, had been convicted in an Indiana state court of voluntary manslaughter. Id., 478. At the time of his appeal, he was serving a fifteen year prison sentence. Id. While the appeal from his conviction was pending, Heck filed an action in federal court under 42 U.S.C. § 1983, against two of the prosecutors and an investigator involved in his criminal action, claiming that they had engaged in an "unlawful, unreasonable, and arbitrary investigation leading to [his] arrest; know-

Cooke *v.* Williams

ingly destroyed [exculpatory] evidence . . . and caused an illegal and unlawful voice identification procedure to be used at [his] trial.'' (Internal quotation marks omitted.) Id., 479. Heck sought compensatory and punitive monetary damages but did not seek injunctive relief or release from custody. Id. While the appeal in his § 1983 action was pending, the Indiana Supreme Court upheld his conviction and sentence in his direct appeal. Id.

Analogizing Heck's claims of legal malfeasance to a common-law claim of malicious prosecution, the United States Supreme Court explained that "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused. . . . This requirement avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the [plaintiff's] . . . succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction. . . . Furthermore, to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit. . . . [The United States Supreme] Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack . . . . We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.'' (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 484–86.

Cooke *v.* Williams

Accordingly, the court held that, "in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such [a] determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . [pursuant to] 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under [42 U.S.C.] § 1983." (Emphasis altered; footnote omitted.) Id., 486–87.

Although *Heck* involved a civil rights complaint brought under § 1983, alleging that Heck's prosecution violated his civil rights; see id., 479; courts have relied on its reasoning when addressing claims of criminal malpractice brought by convicted criminal defendants against their criminal defense attorneys. See, e.g., *Britt* v. *Legal Aid Society, Inc.*, 95 N.Y.2d 443, 448, 741 N.E.2d 109, 718 N.Y.S.2d 264 (2000) ("[t]he principle . . . that 'civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments' . . . applies with equal force to [criminal malpractice claims]" (citation omitted)); *Gibson* v. *Trant*, 58 S.W.3d 103, 108–109 (Tenn. 2001) (citing *Heck* as analogous authority for proposition that plaintiff in criminal malpractice action must obtain exoneration before bringing action). Among those courts that have applied the rationale of *Heck* outside of the § 1983 context is our own Appellate Court.

In *Taylor* v. *Wallace*, supra, 184 Conn. App. 43, the criminally convicted plaintiff brought a criminal malpractice action against the lawyer who represented him in his unsuccessful habeas trial. See id., 45–46. The Appellate Court relied on the policy rationale applied

Cooke *v.* Williams

in *Heck* and concluded that it lacked subject matter jurisdiction over a claim of criminal malpractice against the plaintiff's former habeas counsel because the plaintiff had not obtained appellate or postconviction relief from his conviction. Id., 49. The Appellate Court "agree[d] with the policy enunciated in *Heck*: if success in a tort action would necessarily imply the invalidity of a conviction [by requiring a finding that the underlying conviction was the result of the attorney's negligence], the action is to be dismissed unless the underlying conviction has been invalidated." Id., 51. The court held that, because the plaintiff's conviction had withstood multiple attacks, as "long as the conviction stands, an action collaterally attacking the conviction may not be maintained." (Footnote omitted.) Id., 52. The Appellate Court concluded that the claim was nonjusticiable and dismissed it. See id., 51–52 and n.5.

One observation is immediately apparent. The United States Supreme Court in *Heck* determined that the plaintiff failed to state a legally cognizable claim in the absence of a favorable disposition of the underlying conviction. *Heck* v. *Humphrey*, supra, 512 U.S. 486–87. The court did not conclude that the failure to state a claim rendered the claim nonjusticiable. Indeed, it is "firmly established . . . that the absence of a valid . . . cause of action does not implicate [subject matter] jurisdiction . . . ." *Steel Co.* v. *Citizens for a Better Environment*, 523 U.S. 83, 89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). Unlike in *Heck*, in which the United States Supreme Court interpreted the failure to obtain a favorable resolution of the underlying conviction as a failure to state a claim; *Heck* v. *Humphrey*, supra, 486–87; the Appellate Court in *Taylor* analyzed the issue as one of justiciability, concluding that the plaintiff's claim was not ripe because his criminal conviction had not been invalidated. *Taylor* v. *Wallace*, supra, 184 Conn. App. 51–52. In doing so, the Appellate Court relied on the

Cooke *v.* Williams

rationale that "[a] tort case is not ripe for adjudication if resolution of an unresolved underlying case is necessary for reliable adjudication." Id., 51.

Having reviewed *Heck* and *Taylor*, we find the analyses in both cases instructive. Although not directly on point, we agree that the rationale of *Heck* helps inform our resolution of the issue of whether a plaintiff must obtain postconviction or appellate relief from an underlying criminal conviction before he or she can state a cognizable claim of criminal malpractice. To the extent that *Taylor* adopts the underlying reasoning of *Heck*, we agree.

We disagree, however, with the Appellate Court's determination in *Taylor* that the failure to obtain appellate or postconviction relief presents an issue of justiciability that implicates a court's subject matter jurisdiction. "[J]usticiability . . . implicate[s] a court's subject matter jurisdiction and its competency to adjudicate a particular matter." (Internal quotation marks omitted.) *Francis* v. *Board of Pardons & Paroles*, 338 Conn. 347, 358, 258 A.3d 71 (2021). Because legal malpractice claims are of the type that courts have the power to adjudicate, the issue is not whether the court is competent to adjudicate the controversy between the parties or whether there is a live controversy between the parties. Rather, the issue is whether a criminally convicted plaintiff who has not obtained appellate or postconviction relief from the underlying conviction has alleged facts that are sufficient to state a valid cause of action for criminal malpractice. Consequently, whether that requirement is met is a matter of the sufficiency of the pleadings, not the power of the court to entertain the action.

Having clarified that the issue is not one of justiciability, we now turn to the question of whether appellate or postconviction relief from the underlying criminal

Cooke *v.* Williams

case is a necessary element of a claim of criminal malpractice relating to representation in the underlying criminal or habeas case.[8] We begin our analysis by looking at the elements of a traditional legal malpractice claim.

"In general, the plaintiff in [a legal] malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages." (Internal quotation marks omitted.) *Grimm* v. *Fox*, 303 Conn. 322, 329, 33 A.3d 205 (2012). "The essential element of causation has two components. The first component, causation in fact, requires us to determine whether the injury would have occurred but for the [attorney's] conduct . . . . The second component, proximate causation, requires us to determine whether the [attorney's] conduct is a substantial factor in bringing about the plaintiff's injuries. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . . In legal malpractice actions arising from prior litigation, the plaintiff typi-

_____

[8] The plaintiff asserts that this court already has decided that favorable resolution of an underlying criminal conviction is not required to sustain a cause of action for malpractice for criminally convicted plaintiffs. Specifically, the plaintiff asserts that, in *Bozelko* v. *Papastavros*, 323 Conn. 275, 283–85, 147 A.3d 1023 (2016), this court examined what was required to prove causation in a criminal malpractice claim against a criminal defense attorney and did not suggest that exoneration was necessary. We disagree that this issue was decided in *Bozelko*.

In *Bozelko*, the convicted plaintiff brought a claim of criminal malpractice against her criminal defense attorney. Id., 278–79. The issue before this court was whether the trial court properly had granted the defendant's motion for summary judgment because the plaintiff failed to disclose an expert witness. Id., 277. This court concluded that expert testimony was required for a legal malpractice action. Id., 289–90. None of the parties raised the claim presented in the present case, namely, that the plaintiff had not alleged a valid cause of action for criminal malpractice because she had not obtained a favorable resolution of her underlying criminal case. Therefore, that issue was not before the court in *Bozelko* and, thus, was not decided in that case.

Cooke *v.* Williams

cally proves that the . . . attorney's professional negligence caused injury to the plaintiff by presenting evidence of what would have happened in the underlying action had the [attorney] not been negligent. . . . More specifically, the plaintiff must prove that, in the absence of the alleged breach of duty by her attorney, the plaintiff would have prevailed [in] the underlying cause of action and would have been entitled to judgment. . . . To meet this burden, the plaintiff must produce evidence explaining the legal significance of the attorney's failure and the impact this had on the underlying action.'' (Citations omitted; internal quotation marks omitted.) *Bozelko* v. *Papastavros*, 323 Conn. 275, 283–84, 147 A.3d 1023 (2016); see, e.g., *Mayer* v. *Biafore, Florek & O'Neill*, 245 Conn. 88, 92, 713 A.2d 1267 (1998) (''[i]n general, the plaintiff in an attorney malpractice action must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages'').

We agree with the Oregon Supreme Court that ''[l]egal malpractice is a common-law tort claim. In the absence of any pertinent legislation, it is for this court to define what constitutes legally cognizable harm in a tort case. The legislature has not addressed directly the question of when a person whose lawyer in a criminal case is guilty of professional negligence has been harmed for the purposes of a professional negligence action; [the] court therefore must do so.'' *Stevens* v. *Bispham*, 316 Or. 221, 229, 851 P.2d 556 (1993).

Having carefully considered the issue, we conclude that the adjudication of causation and harm in a criminal malpractice case ordinarily will necessarily implicate the finding of guilt in the underlying criminal case, and a verdict in favor of the plaintiff will thereby undermine the legitimacy of the criminal conviction, as the courts in *Heck* and *Taylor* explained. See *Heck* v. *Humphrey*, supra, 512 U.S. 484–85; *Taylor* v. *Wallace*, supra, 184

Cooke *v.* Williams

Conn. App. 51–52. We join the jurisdictions that have reached the same conclusion and, as a result, require that a convicted criminal defendant turned civil plaintiff must prove that he or she has obtained either postconviction or appellate relief from his or her conviction before pursuing a criminal malpractice action. See, e.g., *Trigg* v. *Farese*, 266 So. 3d 611, 616 (Miss. 2018) ("We join the substantial majority of courts in holding that, because these allegations would entitle the plaintiff to relief from his underlying conviction, he must first pursue them through the [criminal justice] process. In other words, a convict must 'exonerate' himself by obtaining relief from his conviction or sentence before he may pursue a claim against his defense attorney for causing him to be convicted or sentenced more harshly than he should have been."); *Gibson* v. *Trant*, supra, 58 S.W.3d 108 ("The large majority of courts [that have] address[ed] this issue have held that some form of exoneration is a precondition to maintaining a criminal malpractice claim. A plaintiff must meet this exoneration requirement before he can sue his defense lawyer.").

Although the majority of jurisdictions adhere to this requirement and have imposed an exoneration rule, they are far from uniform in their approach. Some jurisdictions require plaintiffs to prove only that they have obtained appellate or postconviction relief, i.e., having the conviction overturned or being granted habeas relief.[9]

[9] See, e.g., *Hastings* v. *Wilbur Smith Law Firm*, Docket No. 20-10313, 2021 WL 3207320, *3 (11th Cir. July 29, 2021) ("a convicted criminal defendant must obtain appellate or [postconviction] relief as a precondition to maintaining a legal malpractice action"); *Shaw* v. *State, Dept. of Administration*, 816 P.2d 1358, 1360 (Alaska 1991) ("[w]e hold that a convicted criminal defendant must obtain [postconviction] relief before pursuing an action for legal malpractice against his or her attorney"); *Steele* v. *Kehoe*, 747 So. 2d 931, 933 (Fla. 1999) ("a convicted criminal defendant must obtain appellate or postconviction relief as a precondition to maintaining a legal malpractice action"); *Noske* v. *Friedberg*, 656 N.W.2d 409, 414 (Minn. App.) (date of conviction relief triggers accrual of criminal malpractice action), aff'd, 670 N.W.2d 740 (Minn. 2003); *Johnson* v. *Schmidt*, 719 S.W.2d 825, 826 (Mo. App. 1986) ("[i]n order for [the] appellant to proceed on his alleged claim of legal malpractice, he must first allege and establish that the actions or

Cooke *v.* Williams

Others take a more stringent approach and require that plaintiffs in criminal malpractice actions not only prove that they have obtained appellate or postconviction relief but also prove by a preponderance of the evidence that they are actually innocent of the crimes of which they were convicted (actual innocence).[10] Under either approach,

omissions by [the] respondent prevented his acquittal”); *Clark* v. *Robison*, 113 Nev. 949, 951, 944 P.2d 788 (1997) (once relief from conviction is granted, criminal malpractice claim may be brought); *Stevens* v. *Bispham*, supra, 316 Or. 230–31 (reversal through direct appeal, postconviction relief or otherwise is required to bring professional negligence claim against criminal defense counsel); *Gibson* v. *Trant*, supra, 58 S.W.3d 116 (adopting requirement that plaintiff must prove exoneration to bring criminal malpractice action); *Peeler* v. *Hughes & Luce*, 909 S.W.2d 494, 497–98 (Tex. 1995) (“[b]ecause of public policy, we side with the majority of courts and hold that plaintiffs who have been convicted of a criminal offense may negate the sole proximate cause bar to their claim for legal malpractice in connection with that conviction only if they have been exonerated on direct appeal, through [postconviction] relief, or otherwise”); *Adkins* v. *Dixon*, 253 Va. 275, 281–82, 482 S.E.2d 797 (“a [postconviction] ruling adverse to the defendant will prevent a recovery for legal malpractice”), cert. denied, 522 U.S. 937, 118 S. Ct. 348, 139 L. Ed. 2d 270 (1997); *Falkner* v. *Foshaug*, 108 Wn. App. 113, 118–19, 29 P.3d 771 (2001) (appellate court’s reversal of conviction on ineffective assistance grounds gave rise to criminal malpractice action).

[10] See, e.g., *Coscia* v. *McKenna & Cuneo*, 25 Cal. 4th 1194, 1200, 25 P.3d 670, 108 Cal. Rptr. 2d 471 (2001) (“[i]n a legal malpractice case arising out of a criminal proceeding, California, like most jurisdictions, also requires proof of actual innocence”); *Ray* v. *Stone*, 952 S.W.2d 220, 224 (Ky. App. 1997) (“[b]efore it can be demonstrated that the attorney’s actions were the proximate cause of his damages, the plaintiff must establish his innocence”); *Glenn* v. *Aiken*, 409 Mass. 699, 707, 569 N.E.2d 783 (1991) (“in order to justify a right to recover, a plaintiff . . . must prove by a preponderance of the evidence, not only that the negligence of the attorney defendant caused him harm, but also that he is innocent of the crime charged”); *Rodriguez* v. *Nielsen*, 259 Neb. 264, 273, 609 N.W.2d 368 (2000) (“[w]e therefore hold that a convicted criminal who files a legal malpractice claim against his or her defense counsel must allege and prove that he or she is innocent of the underlying crime”); *Morgano* v. *Smith*, 110 Nev. 1025, 1029, 879 P.2d 735 (1994) (“to prevail at trial, the plaintiff must prove actual innocence of the underlying charge”); *Mahoney* v. *Shaheen, Cappiello, Stein & Gordon, P.A.*, 143 N.H. 491, 496, 727 A.2d 996 (1999) (“It is not sufficient for a [plaintiff] to allege and prove that if counsel had acted differently, legal guilt would not have been established. As a matter of law, the gateway to damages will remain closed unless a [plaintiff] can establish that he or she is, in fact, innocent of the conduct underlying the criminal charge.” (Emphasis omitted.)); *Carmel* v. *Lunney*, 70 N.Y.2d 169, 173, 511 N.E.2d 1126, 518 N.Y.S.2d 605 (1987) (“[t]o state a cause of action for legal

Cooke *v.* Williams

most jurisdictions make proof of appellate or postconviction relief—whether it be solely appellate or postconviction relief or such relief and proof of actual innocence—an additional element of a criminal malpractice claim. Some states employ the exoneration rule in a way that does not require a plaintiff to demonstrate actual innocence but allows the defendant in the criminal malpractice action to raise the actual guilt of the plaintiff as an affirmative defense.[11]

Many jurisdictions justify adopting the exoneration rule on the ground that it is not unfair to require that the plaintiff first obtain relief from the judgment of conviction precisely because the criminally convicted person, unlike a plaintiff alleging malpractice in an underlying civil case, has other mechanisms to obtain redress for the incompetence of counsel, namely, a claim of ineffective assistance of counsel through habeas actions available at both the state and federal level. See, e.g., *Winniczek* v. *Nagelberg*, 394 F.3d 505, 507 (7th Cir. 2005) ("[a] criminal defendant can establish ineffective assistance of counsel, the counterpart to malpractice"). These courts reason that, without exoneration, the criminal conviction is a determination by the

malpractice arising from negligent representation in a criminal proceeding, plaintiff must allege his innocence or a colorable claim of innocence of the underlying offense"); *Bailey* v. *Tucker*, 533 Pa. 237, 247, 621 A.2d 108 (1993) ("[i]f a person is found guilty of a crime, and that person is indeed innocent of any degree of that crime, and it is established that the wrongful conviction was proximately caused by counsel's gross dereliction in his duty to represent the defendant, only then will the defendant be able to collect monetary damages").

[11] See *Shaw* v. *State, Dept. of Administration*, 861 P.2d 566, 572 (Alaska 1993) ("[r]ather than require the plaintiff to prove his actual innocence in order to succeed, we hold that the defendant may raise the issue of the plaintiff's actual guilt as an affirmative defense"). In a similar vein, some courts allow malpractice cases to proceed without exoneration but require proof of actual innocence at trial. See, e.g., *Rodriguez* v. *Nielsen*, 259 Neb. 264, 273, 609 N.W.2d 368 (2000); *Gaylor* v. *Jeffco*, 160 N.H. 367, 369–71, 999 A.2d 290 (2010), citing *Mahoney* v. *Shaheen, Cappiello, Stein & Gordon, P.A.*, 143 N.H. 491, 727 A.2d 996 (1999).

Cooke *v.* Williams

criminal court that the cause of the imprisonment is the plaintiff's criminal wrongdoing, not the negligence of his or her attorney.[12] Requiring a plaintiff to obtain appellate or postconviction relief as an element of his or her criminal malpractice claim demonstrates that, at the very least, the plaintiff is legally innocent and any conviction is not the result of the plaintiff's own criminal wrongdoing, but of the negligence of his or her attorney.[13]

Another closely related rationale for the rule is that it prevents collateral attacks on a judgment of conviction in another court. See, e.g., *Gaines* v. *Manson*, 194 Conn. 510, 516, 481 A.2d 1084 (1984) (explaining that, "[a]lthough collateral attacks on criminal judgments are

_____

[12] Not all courts that have adopted the exoneration rule apply it to a plaintiff who has pleaded guilty, rather than having been adjudicated guilty after a trial. See, e.g., *Mrozek* v. *Intra Financial Corp.*, 281 Wis. 2d 448, 467–68, 699 N.W.2d 54 (2005) (rejecting idea that canvass for guilty plea was akin to adjudication on merits).

[13] Many courts rely on this same rationale for imposing the more stringent actual innocence requirement, as well. As the Supreme Judicial Court of Massachusetts has explained, "[w]hen a plaintiff is a former criminal defendant claiming that his or her defense attorney negligently defended the plaintiff against a criminal charge, [t]he causal requirement between the lawyer's negligence and damage then becomes twofold . . . . The plaintiff must prove by a preponderance of the evidence, not only that the negligence of the attorney defendant caused [the plaintiff] harm, but also that [the plaintiff] is innocent of the crime charged. . . . Thus, the attorney's negligence is not the cause of the former client's injury as a matter of law, unless the plaintiff former client proves that he [or she] did not commit the crime." (Citations omitted; internal quotation marks omitted.) *Correia* v. *Fagan*, 452 Mass. 120, 127, 891 N.E.2d 227 (2008). In other words, "[u]nless criminal malpractice plaintiffs can prove by a preponderance of the evidence their actual innocence of the charges, their own bad acts, not the alleged negligence of defense counsel, should be regarded as the cause in fact of their harm." *Ang* v. *Martin*, 154 Wn. 2d 477, 485, 114 P.3d 637 (2005). These courts explain that the purpose behind our tort law does not support permitting a person who is guilty of a crime to profit from his or her own wrongdoing. "Only an innocent person wrongly convicted due to inadequate representation has suffered a compensable injury because in that situation the nexus between the malpractice and palpable harm is sufficient to warrant a civil action, however inadequate, to redress the loss." *Wiley* v. *San Diego*, 19 Cal. 4th 532, 539, 966 P.2d 883, 79 Cal. Rptr. 2d 672 (1998).

472 JUNE, 2024 349 Conn. 451

Cooke *v.* Williams

generally disfavored, the writ of habeas corpus holds an honored position in our jurisprudence . . . [as] a bulwark against convictions that violate fundamental fairness'' (internal quotation marks omitted)). Because a plaintiff in a criminal malpractice action must demonstrate that, in the absence of his or her attorney's negligence, he or she would not have been convicted, the civil action acts as a collateral attack on the criminal conviction. Therefore, most courts have concluded that, ''by operation of the doctrine of collateral estoppel, a valid criminal conviction acts as a bar to overturning that conviction in a civil damages suit.'' *Levine* v. *Kling*, 123 F.3d 580, 583 (7th Cir. 1997); accord *Trigg* v. *Farese*, supra, 266 So. 3d 622. Moreover, because other avenues of relief—both direct and collateral—are available to criminally convicted persons, allowing such plaintiffs to challenge the propriety of their convictions in a criminal malpractice action after they have been unsuccessful in challenging their convictions through direct appeals or habeas corpus proceedings would allow challenges to the correctness of judgments of other courts and conflict with the well established doctrine of collateral estoppel. Put differently, if individuals with criminal convictions are permitted to bring claims of criminal malpractice without having to demonstrate that they have obtained appellate or postconviction relief, they can essentially take another bite of the apple and ask the civil court to weigh in on whether their convictions were caused by the negligence of their lawyers, even if habeas review has resulted in the consideration of that very issue and a finding of no merit. Indeed, the rationale of the United States Supreme Court in *Heck* supports precluding such a scenario.

Specifically, the court in *Heck* explained that, in a claim of malicious prosecution, requiring invalidation of the underlying conviction ''avoids parallel litigation over the issues of probable cause and guilt . . . and it

Cooke *v.* Williams

precludes the possibility of the [plaintiff's] . . . succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction. . . . Furthermore, to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit.'' (Citation omitted; internal quotation marks omitted.) *Heck* v. *Humphrey*, supra, 512 U.S. 484. The United States Supreme Court further explained that it believes that "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement . . . . [Therefore] when a state prisoner seeks damages in a § 1983 [action], the [D]istrict [C]ourt must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.'' (Footnotes omitted.) Id., 486–87; see also *Wiley* v. *San Diego*, 19 Cal. 4th 532, 544, 966 P.2d 983, 79 Cal. Rptr. 2d 672 (1998) (requiring exoneration as element of criminal malpractice action is consistent with "a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction'' (internal quotation marks omitted)). The inconsistency of the judgments would sow doubt in the legitimacy of the criminal conviction.

Admittedly, there is an opposing view regarding whether to impose an exoneration rule for criminally convicted plaintiffs in criminal malpractice actions, and it is not without some merit. A minority of courts that have considered the issue have rejected the requirement of

Cooke *v.* Williams

appellate or postconviction relief and have chosen to impose no additional elements in connection with criminal malpractice claims.[14] The courts that have rejected the exoneration requirement have explained that there is no reason to treat criminal and civil plaintiffs differently because both types of plaintiffs can be harmed by their attorney's malpractice. See, e.g., *Duncan* v. *Campbell*, 123 N.M. 181, 186, 936 P.2d 863 (App.), cert. denied, 123 N.M. 168, 936 P.2d 337 (1997).

Although we understand this argument for treating the negligence of criminal defense or habeas counsel in the same manner that we treat the negligence of civil counsel, we find the minority view unpersuasive because it does not account for the real differences between civil and criminal cases. These jurisdictions do not adequately consider the important policy reasons underlying the exoneration requirement, in particular, the substantial harm that may result from an inconsistent tort judgment casting doubt on the validity of a criminal conviction that has not been vacated or reversed through the established mechanisms of postconviction relief that are specifically intended to safeguard the integrity of criminal convictions in our system of justice.

We recognize that there is an argument that it is unfair to require someone whose conviction is caused by the

---

[14] See, e.g., *Molen* v. *Christian*, 161 Idaho 577, 582, 388 P.3d 591 (2017) ("[a]ctual innocence is not an element of a criminal malpractice cause of action"); *Gebhardt* v. *O'Rourke*, 444 Mich. 535, 552, 510 N.W.2d 900 (1994) ("a cause of action for malpractice could well exist regardless of the outcome of [postjudgment] proceedings" (internal quotation marks omitted)); *Jepson* v. *Stubbs*, 555 S.W.2d 307, 313–14 (Mo. 1977) (explaining that, like plaintiff in civil malpractice case, who would not be collaterally estopped from bringing action by judgment that he was negligent, plaintiff in criminal malpractice case would not be collaterally estopped from bringing action by judgment of conviction); *Duncan* v. *Campbell*, 123 N.M. 181, 184–86, 936 P.2d 863 (App.) (rejecting reasoning behind exoneration rule), cert. denied, 123 N.M. 168, 936 P.2d 337 (1997); *Krahn* v. *Kinney*, 43 Ohio St. 3d 103, 106, 538 N.E.2d 1058 (1989) (rejecting rule that plaintiff must allege reversal of his conviction to state cause of action for criminal malpractice).

Cooke *v.* Williams

negligence of his or her criminal defense or habeas counsel to obtain appellate or postconviction relief before seeking damages for criminal malpractice, particularly when the negligence is extreme. We do not take this concern lightly. We are confident, however, that the substantial protections already in place in our criminal justice system—both direct appellate and collateral relief—adequately ensure that these types of wrongs would be identified and addressed, particularly in light of the right to appellate and postconviction representation. Accordingly, we are not persuaded that this is a reason not to adopt the exoneration rule.

Having considered these various opinions and the policies that underlie both the majority position and the minority position, we find the majority position more persuasive. The main reasons for adopting this approach are interrelated: first, the judicial policy against inconsistent judgments arising out of the same transaction; and, second, the elaborate remedial system embodied in Connecticut's habeas laws providing comprehensive and robust postconviction procedures intended to address, among other things, allegations that a criminal conviction was the result of the ineffective assistance of criminal defense counsel. Specifically, the legislature has created a statutory entitlement to counsel in "any habeas corpus proceeding arising from a criminal matter . . . ." General Statutes § 51-296 (a). This statutory right includes the right to " 'effective and competent' " habeas counsel. *Lozada* v. *Warden*, 223 Conn. 834, 838– 39, 613 A.2d 818 (1992). Connecticut takes that statutory right so seriously that habeas petitioners in this state are afforded the opportunity to challenge their convictions through successive petitions based on inadequate performance by habeas counsel. See, e.g., *Kaddah* v. *Commissioner of Correction*, 324 Conn. 548, 559, 153 A.3d 1233 (2017) ("a third habeas petition is available as a matter of fundamental fairness to vindicate the statu-

Cooke *v.* Williams

tory right under § 51-296 (a) to competent counsel in litigating a second habeas petition'').

We are confident that Connecticut's rights to appeal and to postconviction proceedings, along with the availability of federal habeas remedies, provide an efficient structure for obtaining relief from a criminal conviction or the denial of habeas relief caused by the negligence of counsel. Accordingly, the protections afforded to criminal defendants to challenge their convictions through the habeas process in Connecticut lend even more support to our adoption of the exoneration rule for claims of criminal malpractice.

In fact, the elaborate and comprehensive nature of our criminal justice system's scheme to address convictions resulting from negligent lawyers ''also appears to establish something else, [namely], that it is the public policy of this state to treat any person who has been convicted of [a] criminal offense as validly convicted unless and until the person's conviction has been reversed, whether on appeal or through [postconviction] relief, or the person otherwise has been exonerated. Any policy choice that [the] court might make concerning when a person [who has been convicted of a crime] . . . should be deemed to have been harmed by legal malpractice on the part of the person's criminal defense counsel should respect, and not hinder, the valid policy choices already made by the legislature. Respecting the legislature's comprehensive criminal justice construct means, at a minimum, that it is inappropriate to permit a person who has been convicted of a criminal offense to assert in the courts a claim for legal malpractice in connection with that conviction unless and until the person has challenged successfully the conviction through the direct appeal or [postconviction] processes [provided by state law] . . . .'' *Stevens* v. *Bispham*, supra, 316 Or. 230–31.

Accordingly, we now hold that, when proof of a criminal malpractice claim requires a plaintiff to prove that the attorney's negligence was a proximate cause of the

Cooke *v.* Williams

underlying criminal conviction, the claim is insufficient as a matter of law unless the plaintiff has obtained appellate or postconviction relief for the underlying conviction. Having adopted the exoneration rule, we now must decide which version of that rule will best serve the interests that we have articulated, i.e., whether it is adequate to require that the would-be plaintiff must first obtain appellate or postconviction relief overturning the conviction, or must also demonstrate actual innocence, as some courts require. Because of the procedural posture of this case, in which the plaintiff has not even pleaded that he has obtained appellate or postconviction relief for his underlying criminal conviction, the issue of whether we will not only require exoneration, but also that a plaintiff prove his or her actual innocence, is not necessary to our resolution of this appeal. Therefore, we save for another day the question of whether to adopt the actual innocence rule.[15]

Importantly, notwithstanding our adoption of the exoneration rule, it should be clear that, if the plaintiff's criminal malpractice claim does not require findings that would undermine the validity of the underlying conviction, our holding today does not mean that such a claim would be barred for lack of exoneration. See, e.g., *Cortez* v. *Gindhart*, 435 N.J. Super. 589, 603, 90 A.3d 653 (App. Div. 2014) (concluding that criminal malpractice claim did not require proof of exoneration when allegation did not depend on invalidity of plaintiff's conviction or his admission of guilt), cert. denied, 220 N.J. 269, 105 A.3d 1102 (2015). Indeed, the Appellate Court correctly concluded that the plaintiff's claim of fraud in the present case could proceed; see *Cooke* v.

_____

[15] We recognize that there are concerns regarding the applicability of the statute of limitations to claims of criminal malpractice. See General Statutes § 52-577 (three year statute of repose). We also appreciate Justice McDonald's effort to highlight those concerns. Because those issues were not raised and are thus not at issue in this appeal, however, we leave resolution of those concerns for another day.

Cooke *v.* Williams

*Williams*, supra, 206 Conn. App. 177; and that claim is not the subject of this appeal. Such claims do not directly or indirectly challenge the validity of the conviction and, thus, are not subject to the exoneration rule.

In the present case, the only claim of criminal malpractice before this court relates to the alleged professional negligence in connection with the defendants' representation of the plaintiff in his habeas proceeding. The plaintiff was not successful in that habeas action and has unsuccessfully challenged his conviction through direct appeals. See *Cooke* v. *Commissioner of Correction*, 194 Conn. App. 807, 810, 222 A.3d 1000 (2019), cert. denied, 335 Conn. 911, 228 A.3d 1041 (2020); *State* v. *Cooke*, supra, 134 Conn. App. 574. The plaintiff is currently challenging his conviction in yet another habeas action that is scheduled for trial later this year. In his criminal malpractice action at issue here, the plaintiff alleges that the defendants' failures resulted in his inability to prove ineffective assistance of his trial counsel.

Therefore, to prove that the defendants' conduct was the proximate cause of the plaintiff's harm, namely, the denial of his habeas petition and continued incarceration, the plaintiff necessarily would have to prove that the defendants' negligence was a substantial cause of his conviction and that he probably would have prevailed on his habeas petition if the negligence had not occurred. Because the plaintiff has not obtained any appellate or postconviction relief, we conclude that the plaintiff's claim of criminal malpractice fails to state a cognizable claim of criminal malpractice.

To the extent that the plaintiff asserts that, even if we adopt the exoneration rule, it should not apply to his claim of criminal malpractice because he is alleging that his habeas counsel, instead of defense counsel in his criminal case, committed malpractice, we disagree.

349 Conn. 451 JUNE, 2024 479

Cooke *v.* Williams

Instead of focusing on whether the claim of criminal malpractice is brought against trial, appellate, or habeas counsel, the focus of whether the exoneration rule applies is on whether the claim of criminal malpractice challenges the validity of the underlying conviction. As the Appellate Court aptly explained: "In his amended complaint, the plaintiff alleges that the defendants, in violation of their duties, neglected to prosecute his habeas petition fully and properly because the 'aspects of the case that were investigated were misused by the defendants due to failures to comprehend the requisite law, facts and issues, and to have any coherent trial strategy,' the 'defendants failed to adequately prepare the plaintiff for trial,' the 'defendants failed to develop evidence in support of the habeas case,' and the 'defendants failed to properly prepare and present court documents, [including] . . . motions, posttrial briefs, and postjudgment remedies.' He further alleges that the defendants' failures 'in investigation and comprehension of the facts of the case yielded a failure to present and prove prejudice' pursuant to *Strickland* v. *Washington*, supra, 466 U.S. 668. These allegations clearly implicate the sufficiency of the defendants' representation in the habeas proceedings and, to prove these allegations [in a negligence case], the plaintiff presumably would have to demonstrate that he would not have sustained an injury of continued incarceration had professional negligence not occurred. . . . The allegations in the plaintiff's legal malpractice claim thus necessarily imply the invalidity of the plaintiff's conviction." (Citation omitted.) *Cooke* v. *Williams*, supra, 206 Conn. App. 163. Given that the plaintiff's claim of criminal malpractice necessarily challenges the validity of his underlying conviction, his claim fails for failure to plead and prove that he has obtained appellate or postconviction relief from his criminal conviction.

Having adopted the exoneration rule today and explained that it is not an issue of justiciability but,

Cooke *v.* Williams

instead, requires an additional element to be alleged and proven in a cause of action for criminal malpractice, we conclude that the plaintiff's claim of criminal malpractice should not have been the subject of a motion to dismiss, but was more properly the subject of a motion to strike. Compare Practice Book § 10-30 (a) ("[a] motion to dismiss shall be used to assert . . . lack of jurisdiction over the subject matter"), with Practice Book § 10-39 (a) ("[a] motion to strike shall be used whenever any party wishes to contest . . . the legal sufficiency of the allegations of any complaint . . . or of any one or more counts thereof, to state a claim upon which relief can be granted"). Therefore, we conclude as a matter of form that the Appellate Court improperly affirmed the judgment of the trial court dismissing the plaintiff's claim of criminal malpractice for lack of subject matter jurisdiction.

The judgment of the Appellate Court is reversed with respect to the plaintiff's claim of criminal malpractice and the case is remanded to that court with direction to remand to the trial court with direction to deny the defendants' motion to dismiss and for further proceedings consistent with this opinion; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.

McDONALD, J., concurring. I agree with and join the majority's well reasoned opinion. I also agree with the result the majority reaches. I write separately to highlight a likely problem posed by the applicability of the statute of limitations to a claim of criminal malpractice and to provide guidance to litigants and trial courts on how the problem may perhaps be minimized.

It is undisputed that General Statutes § 52-577 governs claims of legal malpractice in Connecticut. See, e.g., *Doe* v. *Boy Scouts of America Corp.*, 323 Conn.

Cooke *v.* Williams

303, 340 n.25, 147 A.3d 104 (2016) (recognizing § 52-577 "applies, for example, to legal malpractice actions"); *DeLeo* v. *Nusbaum*, 263 Conn. 588, 589–90, 821 A.2d 744 (2003) (applying statute of limitations in § 52-577 to legal malpractice action); *Straw Pond Associates, LLC* v. *Fitzpatrick, Mariano & Santos, P.C.*, 167 Conn. App. 691, 714, 145 A.3d 292 ("[a]n action alleging legal malpractice or negligence is a tort claim subject to the three year statute of limitations set forth in § 52-577"), cert. denied, 323 Conn. 930, 150 A.3d 231 (2016).

Section 52-577 provides: "No action founded upon a tort shall be brought but within three years *from the date of the act or omission complained of.*" (Emphasis added.) "This court has explained that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred. . . . The date of the act or omission complained of is the date when the . . . conduct of the defendant occurs . . . . *Certain Underwriters at Lloyd's, London* v. *Cooperman*, 289 Conn. 383, 408, 957 A.2d 836 (2008); see also *Rosato* v. *Mascardo*, 82 Conn. App. 396, 407, 844 A.2d 893 (2004) (characterizing § 52-577 as statute of repose). As such, an action commenced more than three years from the date of the negligent act or omission complained of is [time] barred . . . regardless of whether the plaintiff had not, or in the exercise of [reasonable] care could not reasonably have discovered the nature of the injuries within that time period. . . . *Martinelli* v. *Fusi*, 290 Conn. 347, 355, 963 A.2d 640 (2009)." (Internal quotation marks omitted.) *Essex Ins. Co.* v. *William Kramer & Associates, LLC*, 331 Conn. 493, 503, 205 A.3d 534 (2019).

As the Appellate Court has recognized, "[§] 52-577 is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues."

Cooke *v.* Williams

(Internal quotation marks omitted.) *Piteo* v. *Gottier*, 112 Conn. App. 441, 445, 963 A.2d 83 (2009). Moreover, "[i]gnorance of his rights on the part of the person against whom the statute has begun to run . . . will not suspend its operation. He may discover his injury too late to take advantage of the appropriate remedy." *Bank of Hartford County* v. *Waterman*, 26 Conn. 324, 329 (1857).

In light of the majority's conclusion that exoneration from the underlying conviction is an element of a cause of action for criminal malpractice, I foresee § 52-577 presenting a significant issue for plaintiffs. In other words, if one waits to obtain appellate or postconviction relief before bringing a meritorious cause of action for criminal malpractice, it is unlikely that he or she will be able to do so within three years of the act or omission constituting malpractice, given the time frames usually associated with such postconviction litigation efforts. Some courts, however, have provided guidance on how to avoid the unfortunate circumstance of the running of a statute of limitations before the plaintiff's cause of action even accrues: a plaintiff claiming to be injured by the criminal malpractice of his defense attorney may file a timely cause of action for criminal malpractice and seek an immediate stay of that action while he pursues appellate or postconviction relief relating to his underlying conviction. See, e.g., *Coscia* v. *McKenna & Cuneo*, 25 Cal. 4th 1194, 1210–11, 25 P.3d 670, 108 Cal. Rptr. 2d 471 (2001) ("[T]he plaintiff must file a malpractice claim within the . . . [limitation] period set forth in [the code of civil procedure]. Although such an action is subject to [a motion to strike] or summary judgment while a plaintiff's conviction remains intact, the court should stay the malpractice action during the period in which such a plaintiff timely and diligently pursues postconviction remedies."); see also, e.g., *Gibson* v. *Trant*, 58 S.W.3d 103, 117 (Tenn. 2001).

Accordingly, I concur in the judgment.